Chad A. Rutkowski
Oren J. Warshavsky (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1735 Market Street, Suite 3300
Philadelphia, PA 19103-7501
Phone: 215.568.3100
Fax: 215.568.3439
Email: crutkowski@bakerlaw.com

*Attorneys for Plaintiffs* CHRISTOPHER "CHIP" PAUCEK and PRO ATHLETE COMMUNITY, INC.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER "CHIP" PAUCEK and PRO ATHLETE COMMUNITY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DAHN SHAULIS,<br><br>Defendant. | Case No.: 1:24-cv-09807<br><br>Chief Judge Renée Marie Bumb<br><br>Magistrate Judge Ann Marie Donio<br><br>Motion Day: July 7, 2025<br><br>**CONSOLIDATED BRIEF OPPOSING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM** |

## TABLE OF CONTENTS

**PAGE**

**PRELIMINARY STATEMENT** .......................... 1

**FACTUAL BACKGROUND** .......................... 3

**ARGUMENT** .......................... 6

I. **PLAINTIFFS STATE PLAUSIBLE CLAIMS FOR DEFAMATION** .......................... 7

A. **Elements of a Defamation Claim Under New Jersey Law** .......................... 8

B. **Shaulis Published Actionable Defamatory Statements Concerning Plaintiffs** .......................... 8

1. **The Shaulis Posts Are Defamatory *Per Se*** .......................... 8

2. **Even If Not Defamatory *Per Se*, the Shaulis Posts Are Reasonably Susceptible to Defamatory Meaning** .......................... 10

3. **Even If Opinion, the Shaulis Posts Are Actionable Mixed Opinions** .......................... 13

C. **The Shaulis Posts Did Not Involve Matters of Public Concern** .......................... 16

D. **Paucek is Not a Public Figure** .......................... 19

E. **Plaintiffs Have Adequately Pleaded Actual Malice** .......................... 23

II. **PAC STATES A PLAUSIBLE CLAIM FOR TORTIOUS INTERFERENCE** .......................... 26

III. **THE COURT SHOULD IGNORE SHAULIS'S IMMATERIAL ARGUMENTS** .......................... 29

IV. **SHAULIS'S NJ UPEPA COUNTERCLAIM MUST BE DISMISSED** .......................... 30

**CONCLUSION** .......................... 30

# TABLE OF AUTHORITIES

**PAGES**

**Cases**

*8600 Landis, LLC v. City of Sea Isle City*, Civ. No. 17–2234,
2018 WL 1509088 (D.N.J. Mar. 27, 2018) .......... 26, 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 7

*Bajardi v. Pincus*, Nos. A-5668-14T4, A-5729-14T4, A-5745-14T4,
2019 WL 3521847 (N.J. Super. App. Div. Aug. 2, 2019) .......... 24

*Biro v. Conde Nast*, 883 F.Supp.2d 441 (S.D.N.Y. 2012) .......... 14

*Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681 (4th Cir. 1989) .......... 20

*Carr v. Forbes, Inc.*, 259 F.3d 273 (4th Cir. 2001) .......... 22

*Churchill Downs, Inc. NLR Entm't, LLC v. Carstanjen*, Civ. No. 14–03342,
2015 WL 5854134 (D.N.J. Oct. 5, 2015) .......... 10, 11, 12, 24

*Creditors Relief LLC v. United Debt Settlement LLC*, C.A. No. 17-7474,
2019 WL 7288978 (D.N.J. Dec. 30, 2019) .......... 11

*DeAngelis v. Hill*, 180 N.J. 1 (2004) .......... 10

*Diaz v. Bd. of Educ. of the Tp. of S. Brunswick*, No. 05–4667,
2006 WL 3490339 (D.N.J. Dec. 1, 2006) .......... 19

*Dill v. Yellin*, 725 F.Supp.3d 471 (D.N.J. 2024) .......... 12, 13

*Dixson v. Newsweek, Inc.*, 562 F.2d 626 (10th Cir. 1977) .......... 22

*Dubac v. Itkoff*, 101 Cal.App.5th 540 (2024) .......... 16, 17

*Durando v. Nutley Sun*, 209 N.J. 235 (2012) .......... 23, 24, 26

*Eli Lilly and Co. v. Roussel Corp.*, 23 F.Supp.2d 460 (D.N.J. 1998) .......... 29

*First Nat'l Prop. Mgmt., LLC v. Chapman*, C.A. No. 23-00603,

2024 WL 230115 (D.N.J. Jan. 22, 2024) ........................................................ 12, 13, 24

*G.D. v. Kenny*, 205 N.J. 275 (2011) ........................................................ 8, 9

*Gertz v. Robert Welch, Inc.* 418 U.S. 323 (1974) ........................................................ 19

*GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal.App.4th 141 (2013) ........................................................ 16

*Heartland Payment Sys., LLC v. Carr*, No. 3:18-cv-09764,

2021 WL 302918 (D.N.J. Jan. 29, 2021) ........................................................ 27, 28

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) ........................................................ 30

*Hoang v. Tran*, 60 Cal. App. 5th 513 (2021) ........................................................ 16

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) ........................................................ 20

*Jevremovic v. Courville*, C.A. No. 22-4969,

2023 WL 5127332 (D.N.J. Aug. 10, 2023) ........................................................ 10

*Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 N.J. 451 (1982) ........................................................ 9, 26

*Levy v. Nissani*, 179 A.D.3d 656 (N.Y. Supr. Ct. App. Div. 2020) ........................................................ 12, 14

*Lombardo v. Leonard*, C.A. No. 2:24-cv-01711-KBH,

2025 WL 904373 (E.D. Pa. Mar. 25, 2025) ........................................................ 20

*Mangan v. Corporate Synergies Grp., Inc.*, 834 F.Supp.2d 199 (D.N.J. 2011) ........... 8, 14, 15, 23

*Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072 (3d Cir. 1985) ........................................................ 20

*Mayer v. Mayer*, No. CV232272GCJBD, 2024 WL 1283826 (D.N.J. Mar. 26, 2024) ...... 8, 23, 24

*Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362 (D.N.J. 2004) ........................................................ 14

*McCabe v. Rattiner*, 814 F.2d 839 (1st Cir. 1987) ........................................................ 11

*Minuto v. Genesis Advisory Servs., Inc.*, C.A. No. 11–3391,

2012 WL 1085807 (D.N.J. Mar. 29, 2012) ........................................................ 27

*Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905 (2021) ........................................................ 16

*Mzamane v. Winfrey*, 693 F.Supp.2d 442 (E.D. Pa. 2010) .................................................... 14, 15

*N. Star Mgmt., Inc. v. Ins. Prof'ls, Inc.*, C.A. No. 12–cv–3839,

2013 WL 5334412 (D.N.J. Sept. 23, 2013) ................................................................... 28

*Nanavati v. Burdette Tomlin Mem'l Hosp.*, 645 F.Supp. 1217 (D.N.J. 1986)............................. 22

*Neuwirth v. State*, 476 N.J.Super. 377 (App. Div. 2023)........................................... 23, 24, 25, 26

*Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*, C.A. No. 07–5945,

2008 WL 4911868 (D.N.J. Nov. 13, 2008) ................................................................... 29

*NuWave Inv. Corp. v. Hyman Beck & Co, Inc.*,

432 N.J.Super. 539 (App. Div. 2013) ................................................................... 9, 11, 12

*NVR, Inc. v. Davern*, Civ. No. 15-5059, 2016 WL 7013459 (D.N.J. Nov. 30, 2016) ................. 27

*Orr v. Argus-Press Co.,* 586 F.2d 1108 (6th Cir. 1978) ............................................................. 20

*Perrigo Co. v. AbbVie Inc.*, No. 21-3026, 2022 WL 2870152 (3d Cir. 2022)............................... 7

*Pistilli-Leopardi v. MediaNews Grp., Inc.*, No. A-0086-18T1,

2020 WL 3967992 (N.J. Super. App. Div. July 14, 2020) ...................................................... 24

*Ravotti v. OneJet, Inc.*, C.A. No. 18-1598, 2021 WL 2718397 (D.N.J. July 1, 2021) ................. 7

*Read v. Profeta*, No. 15-cv-2637, 2017 WL 123438 (D.N.J. Jan. 11, 2017)............................... 29

*Redmond v. Gawker Media, LLC*, No. A132785,

2012 WL 3243507 (Cal. App. Ct. Aug. 10, 2012)........................................................... 11, 13

*Roberts v. Mintz*, No. A-1563-14T4,

2016 WL 3981128 (N.J. Super. App. Div. July 26, 2016) ............................................... 11, 13

*Roffman v. Trump*, 754 F.Supp. 411 (E.D. Pa. 1990) ................................................................ 20

*Schiavone Const. Co. v. Time, Inc.*, 619 F.Supp. 684 (D.N.J. 1985)........................................... 22

*Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988) ............................................ 24

*Senna v. Florimont*, 196 N.J. 469 (N.J. 2008) ............................................................. 7, 8, 10, 17

*Shadle v. Nexstar Broad. Grp., Inc.*, No. 3:13-CV-2169,

2016 WL 7325509 (M.D. Pa. Aug. 31, 2016) .................................................................. 12, 13

*St. Amant v. Thompson*, 390 U.S. 727 (1968)...................................................................... 24

*Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264 (3d Cir. 1980) .............................................. 20

*Summit Bank v. Rogers*, 206 Cal.App.4th 669 (2012) ............................................................ 16

*Sunbelt Rentals, Inc. v. EquipmentShare.com Inc*., No. 21-6511,

2021 WL 4311517 (D.N.J. Sept. 22, 2021) ......................................................................... 27

*Sylvan Dental, P.A. v. Chen*, No. A-4544-18,

2021 WL 3671164 (N.J. Super. App. Div. Aug. 19, 2021) .................................................. 8, 9

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ........................................................... 19, 23

*Technovate LLC v. Fanelli*, No. 003713/15,

2015 WL 5554547 (N.Y. Civ. Ct. Sept. 10, 2015) ............................................................... 14

*Time, Inc. v. Firestone*, 424 U.S. 448 (1976)......................................................................... 22

*Too Much Media, LLC v. Hale*, 206 N.J. 209, 237 (2011) ..................................................... 17

*Trans World Accts., Inc. v. Associated Press*, 425 F.Supp. 814 (N.D. Cal. 1977) ...................... 22

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392 (1995).................. 17, 18, 26

*W.J.A. v. D.A.*, 210 N.J. 229 (2012)................................................................................ 18, 19

*Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980) ..................... 20, 21, 22, 23

*Ward v. Zelikovsky*, 136 N.J. 516 (1994)......................................................................... 10, 13

*Wells v. Liddy*, 186 F.3d 505 (4th Cir. 1999)........................................................................ 20

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187 (3d Cir. 2019) ............... 6

*Yang v. Lin*, C.A. No. 19-8534, 2022 WL 2389300 (D.N.J. July 1, 2022) .................................. 9

**Statutes**

New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1 *et seq*........................................................ 17

New Jersey Shield Law, N.J.S.A. § 2A:84A-21 *et seq*................................................................ 17

New Jersey Uniform Public Expression Protection Act, N.J.S.A. § 2A:53A-49 *et seq*. .......... 1, 30

**Other Authorities**

Katelyn L. Simmons, *Tackling Principal Place of Business Post-Pandemic: When Headquarters are Empty Boardrooms*, 18 CHARLESTON L. REV. 335 (2023) ................................................. 30

Nicholas Hallock, *Distributing the Corporation's Brain: Principal Place of Business Without Physical Presence*, 2/5/2021 U. CHI. L. REV. ONLINE 1 (2021)............................................... 30

Plaintiffs Christopher "Chip" Paucek and Pro Athlete Community, Inc. ("PAC") submit this consolidated brief opposing Defendant Dahn Shaulis's Motion for Judgment on the Pleadings (ECF No. 47) ("Shaulis Motion") and supporting Plaintiffs' Cross-Motion to Dismiss Shaulis's Counterclaim (ECF No. 25 ¶¶ 97–182) under New Jersey's Uniform Public Expression Protection Act, N.J.S.A. § 2A:53A-49 *et seq*. ("NJ UPEPA") ("Cross-Motion to Dismiss").

## PRELIMINARY STATEMENT

Shaulis, a self-proclaimed watchdog for higher education, publicly called PAC a "scam" and Paucek "the consummate con man" who has a "track record as an unethical businessman." These accusations of fraudulent and criminal conduct are defamatory *per se*. Shaulis had no basis to levy these accusations against PAC and Paucek—he did not interview any PAC clients, uncover any facts that PAC failed to deliver on its promises, or even identify a single complaint about PAC or Paucek's work there. In fact, Shaulis willfully ignored evidence to the contrary—he embedded video in his post in which athletes stated that PAC "ignited a fire" in them to improve, and that they were "a better me just from that PAC exposure," and ignored dozens of similar testimonials. Shaulis issued this attack five days before PAC was set to hold an important event, actively seeking to warn athletes from attending. When PAC and Paucek demanded that Shaulis cease his baseless attacks, he amplified his accusations and forced this lawsuit. Shaulis now seeks to dodge the consequences of his behavior by masquerading as a citizen crusader. The First Amendment, however, does not immunize the baseless spreading of lies.

Readers understood Shaulis's accusations to be factual assertions and took them to be true. Nonetheless, Shaulis asks this Court to find—at the earliest stage of litigation—that his accusations were protected opinion. This in effect asks the Court to rewrite the Federal Rules of Civil Procedure ("FRCP"), placing a non-existent pleading burden on Plaintiffs and making

material inferences of fact in ***Shaulis's*** favor. Hornbook law calls for all such inferences to be made in ***Plaintiffs'*** favor. That Shaulis must rely on unwarranted inferences and matters outside of the pleadings underscores the weakness of his position.

The First Amendment does not immunize Shaulis's publication of bare defamatory accusations. Nothing in his posts indicated he was offering his opinion. When read in context, Shaulis warned PAC's existing and potential clients about the supposedly real threat that they would be duped if they did business with Plaintiffs. Moreover, Shaulis's accusations against Plaintiffs are verifiable falsities. And even if opinions, Shaulis's accusations were actionable mixed opinions because they implied the existence of false underlying "facts" that were not disclosed to readers. Shaulis requested that PAC's potential clients and business associates consult counsel and provide Shaulis the details of their discussions with PAC. In exchange Shaulis offered to "share with you what we know," expressly offering the factual support he was purporting to withhold.

Shaulis argues Plaintiffs failed to adequately plead "actual malice." In so doing, Shaulis inappropriately and almost exclusively relies on a decision under a state pleading standard not applicable here. Regardless, Plaintiffs have satisfied that burden by pleading facts supporting a reasonable inference that Shaulis recklessly disregarded the truth. Shaulis purposely ignored materials contradicting his accusations and omitted any factual support from his posts.

But Plaintiffs are not required to meet this higher standard. Shaulis's posts did not comment on a "matter of public concern," or a "public controversy" involving a "public figure." The public was not concerned with—much less disputing—the legitimacy of PAC or Paucek's role as Co-CEO prior to Shaulis's posts. Nor did Shaulis's posts provoke such public discussion. Shaulis tries to rehabilitate his statements by inferring non-existent commentary on litigation and

associated publicity involving an unrelated, different company, 2U, Inc. ("2U"), arguing such matters somehow relate to PAC's business. Yet, Shaulis's posts only mention 2U in passing and do not explain any relationship to PAC. As a result, Shaulis improperly relies on matters outside of the pleadings and his accused statements. Similarly, Shaulis's attempt to cast Paucek as a public figure fails. Paucek, like most corporate executives, lacks the requisite fame and notoriety to be a general public figure. Nor is Paucek a limited-purpose public figure: he neither injected himself into nor attempted to influence any public controversy on which Shaulis commented.

PAC also states a standalone claim for tortious interference with prospective business relations ("TIPBR"). PAC alleged its reasonable expectation of business relationships with a defined community of professional athletes, industry experts, and educators, along with specific examples. Shaulis's posts plainly demonstrate his knowledge of these business relationships. As alleged, Shaulis intentionally and wrongfully targeted and interfered with these business relationships by disguising his defamatory accusations and misleading statements as a "warning" to PAC's existing and potential clients and a call for PAC's business associate to "investigate" Plaintiffs. As also alleged, this caused PAC reputational and economic harm.

Finally, Shaulis's "counterclaim" for relief under the NJ UPEPA must be dismissed. *See* Opinion at 35–36, ECF No. 45. Accordingly, Plaintiffs request that the Court deny Shaulis's Motion in its entirety and grant Plaintiffs' Cross-Motion to Dismiss.

## FACTUAL BACKGROUND

Led by its Co-CEOs Paucek and Kaleb Thornhill, PAC provides executive education certificate programs to current and former professional athletes in collaboration with the University of Miami's Herbert Business School and other industry experts and educators. Compl. ¶¶ 2, 17–21. PAC has delivered these programs to over 350 professional athletes, including from the National Football League, the National Basketball Association, Major League Baseball, and

the Ultimate Fighting Championship. *Id.* ¶ 21. Many of these athletes have leveraged the education and training, as well as the ongoing networking, mentorship, community, and support, provided by PAC (and its business associates) to successfully pursue second careers. *Id.* As a result, Plaintiffs have established reputations as excellent resources for professional athletes exploring and pursuing their second careers. *Id.* ¶¶ 2, 23–25.

Deviating from the pleadings, Shaulis labels PAC "an online education network targeting current and former professional athletes." Shaulis Motion at 3–4, ECF No. 47. This intentionally misconstrues PAC. Compl. ¶ 19. Shaulis directed his "SCAM ALERT" at PAC's "live sessions" taking place in Austin, Texas. *Id.* at Ex. B. This is in keeping with Shaulis's constant theme to besmirch 2U and then impute unsubstantiated allegations against Plaintiffs based solely on Paucek's prior leadership of 2U. Shaulis burnishes the contrivance by conflating the business of 2U and PAC despite obvious differences. *Id.* ¶¶ 15, 18–19, 21.

This lack of precision stands in stark contrast to the image Shaulis contrives here as a dedicated consumer watchdog. Shaulis publishes a blog called Higher Education Inquirer (https://www.highereducationinquirer.org/) ("HEI"). *Id.* ¶ 8. Shaulis labeled PAC fraudulent, attacked Plaintiffs' legitimacy and business practices to dissuade PAC's clients and business associates from engaging with them. *Id.* ¶¶ 27–34. Shaulis published a social media post (the "X Post") labeling Paucek "the consummate con man" and calling for PAC's business associate—the Miami Dolphins—to investigate Paucek and "his latest scheme, [PAC]." *Id.* ¶ 27, Ex. A. Shaulis omitted any meaningful factual support from the X Post. *Id.* ¶¶ 27, 40, Ex. A.

Shaulis then published a blog post entitled "SCAM ALERT: Chip Paucek and Pro Athlete Community (aka PAC)" (the "SCAM Post") on his HEI blog. *Id.* ¶ 28, Ex. B. The SCAM Post was a "warning to current and former professional athletes who may be contacted by

[PAC].” *Id.* ¶ 33. Therein, Shaulis accused PAC of being a “scam” because Paucek has a “track record as an unethical businessperson.” *Id.* ¶¶ 29–30. The SCAM Post also requested that professional athletes “document any material statements made” by Plaintiffs, “consult their lawyers,” and “let [Shaulis] know what promises may be said on the back stage.” *Id.* ¶ 33. In return, Shaulis promised to “share … what we know” with those who contact him, clearly indicating that he was withholding the purported factual support for his accusations. *Id.* at Ex. B. The SCAM Post also contained other misleading statements about Plaintiffs. *Id.* ¶¶ 31–32, Ex. B.

Shaulis did not contact any professional athletes or any of PAC’s business associates to verify the SCAM Post before publishing it. *Id.* ¶ 40, Ex. B. Rather, Shaulis invited them to contact him only after he publicly leveled these accusations. *Id.* ¶ 33, Ex. B. Notably, Shaulis published the SCAM Post five days before PAC’s *Next Chapter U* executive education program took place in Austin, Texas. *Id.* at Ex. B. Shaulis’s accusations against Plaintiffs are directly contradicted by various publicly available materials, which Shaulis found and ignored. *Id.* ¶¶ 23–24, 41, Ex. B. For example, the SCAM Post links to YouTube videos in which professional athletes detail their positive experiences with Plaintiffs and the need for PAC. *Id.* at Ex. B. The SCAM Post linked to PAC’s *Next Chapter Podcast* on YouTube, where PAC’s Co-Founder and Co-CEO, Thornhill, and professional athletes share stories about their post-career transitions and how professional athletes can leverage PAC’s offerings.[1] That YouTube page links to PAC’s website, where additional contradictory information is found. *See* Compl. ¶¶ 23–24.

Further, Shaulis embedded PAC’s *PAC Sizzle* YouTube video containing positive statements about PAC and clips from PAC’s executive education programs.[2] The description for

[1] *See* Pro Athlete Community (@NextChapterPod), *Next Chapter Podcast*, YOUTUBE (last visited June 18, 2025), https://www.youtube.com/@NextChapterPod.
[2] *See* Pro Athlete Community (@proathlete-community), *PAC Sizzle*, YOUTUBE (Aug. 21, 2024), https://www.youtube.com/watch?v=HjkmQ0nVrmU.

that YouTube video accurately describes PAC and its services (Compl. ¶¶ 18–19), and again links to PAC's website. Even more damning to Shaulis's argument, he embedded a YouTube video of the discussion between Paucek, PAC's COO Travis Key, and several professional athletes at the April 2024 ASU+GSV Summit concerning PAC, its offerings, and how PAC supports professional athletes in new careers.[3] In that video, Terron Armstead, a former Miami Dolphins player, expressed gratitude towards PAC, stating that "the fire … ignited" by PAC led him to realize that he needed PAC's education "to improve to develop to grow," and "in the year, year and half, I'm a better me, just from that PAC exposure."[4] Coupled with Shaulis's omission of factual support, reasonable readers were left to wonder how Shaulis reached his conclusions after linking to contradictory descriptions and positive reviews. *Id.* ¶ 40, Ex B.

Plaintiffs demanded that Shaulis remove the SCAM Post. *Id.* ¶ 43. Rather than simply doing so, Shaulis doubled down by publishing a second blog post (the "Amplifying Post") announcing that "[he] stand[s] by all the facts of the story and [his] characterizations about Mr. Paucek …."[5] Compl. ¶¶ 43–47. Plaintiffs thus initiated this action concerning the X Post, SCAM Post, and Amplifying Post (collectively, the "Shaulis Posts") to vindicate their rights, restore their reputations, and establish Shaulis's liability for defamation and TIPBR. *Id.* ¶¶ 5, 48.

## ARGUMENT

A motion for judgment on the pleadings "'is analyzed under the same standards that apply to a [FRCP] 12(b)(6) motion [to dismiss].'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citation omitted). Thus, "[a] court … 'must

---

[3] *See* Global Silicon Valley (@globalsiliconvalley), *The New Playbook: Reskilling is the Game for Pro Athletes | ASU+GSV Summit 2024*, YOUTUBE (Apr. 17, 2024), https://www.youtube.com/watch?v=H1sW1VntLFk.
[4] *Id.* at 33:10-42.
[5] Shaulis's subsequent publication of the Amplifying Post defeated the effect of his removal of the SCAM Post. Yet, Shaulis claims he "t[ook] down ***the posts*** in an effort to avoid litigation." Shaulis Motion at 25, ECF No. 47 (emphasis added). His claim is outright false with respect to the Amplifying Post (as well as the X Post).

accept all of the allegations in the pleadings of the [non-moving] party … as true and draw all reasonable inferences in [its] favor ….'" *Ravotti v. OneJet, Inc.*, C.A. No. 18-1598, 2021 WL 2718397, at *2 (D.N.J. July 1, 2021) (citation omitted). "[D]etailed factual allegations" are not required for the non-moving party to prevail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conversely, the moving party must "'clearly establish[ ] there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Perrigo Co. v. AbbVie Inc.*, No. 21-3026, 2022 WL 2870152, at *2, n.6 (3d Cir. 2022) (citation omitted).

"[A] court may examine the complaint, the answer, 'any matter of which the court can take judicial notice for the factual background of the case,' …, and 'written instrument[s] that [are] exhibit[s] to a pleading.'" *Id.* (citations omitted). Given Plaintiffs' Cross-Motion to Dismiss, Shaulis cannot rely on his factual allegations in support of his "counterclaim" (ECF No. 25 ¶¶ 97–182). *See* Shaulis Motion at 1, 3–4, 15, 18–19, 21–22, ECF No. 47. Even to the extent the Court takes judicial notice of certain matters involving 2U, that cannot extend to Shaulis's distorted characterizations of them. *See* Def.'s Amended Answer & Counterclaim ¶¶ 99–102, 104, 118–119, 121–151, 170, 173, ECF No. 25.

## I. PLAINTIFFS STATE PLAUSIBLE CLAIMS FOR DEFAMATION

Along with First Amendment considerations, "the right of a person to be secure in his reputation, which finds its source in Article I Paragraph 1 of our State Constitution, has an equal claim in the development of defamation law in this state." *Senna v. Florimont*, 196 N.J. 469, 490 (2008) (quotations omitted). Shaulis attempts to transform this litigation—which seeks to vindicate Plaintiffs' rights, restore their reputations, and establish Shaulis's liability—into a bad faith attack on his First Amendment rights. Yet, Plaintiffs' Complaint adequately pleads each element of a defamation claim and Shaulis's purported defenses fail, rendering dismissal inappropriate.

### A. Elements of a Defamation Claim Under New Jersey Law

To establish defamation, "a plaintiff must show the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Mangan v. Corporate Synergies Grp., Inc.*, 834 F.Supp.2d 199, 204 (D.N.J. 2011). Plaintiffs only need to plead that Shaulis was negligent; actual malice need only be pleaded "when the allegedly defamatory statement concerns a public figure … or involves a matter of public concern." *Senna*, 196 N.J. at 491, 496. Further, deciding whether actual malice applies "cannot be made in the absence of an adequate record." *Mayer v. Mayer*, No. CV232272GCJBD, 2024 WL 1283826, at *5 (D.N.J. Mar. 26, 2024).

### B. Shaulis Published Actionable Defamatory Statements Concerning Plaintiffs

A defamatory statement "subjects an individual to contempt or ridicule" and "harms a person's reputation … by deterring others from wanting to associate or deal with him…." *G.D. v. Kenny*, 205 N.J. 275, 293 (2011). "'A statement made in the context of and pertaining to a person's trade, profession or business … is actionable if the statement is made with reference to 'a matter of significance and importance' relating to the manner in which [that person] carries out his trade, profession or business.'" *Sylvan Dental, P.A. v. Chen*, No. A-4544-18, 2021 WL 3671164, at *7 (N.J. Super. App. Div. Aug. 19, 2021) (citation omitted).

Shaulis claims that his accusations attacking Plaintiffs' legitimacy and business practices—addressed to PAC's existing and potential clients and business associates—qualify as protected (or pure) opinions. According to well-established caselaw, they were not. And even if opinions were expressed, Shaulis's accusations were mixed opinions and thus actionable.

#### 1. The Shaulis Posts Are Defamatory *Per Se*

Plaintiffs adequately pleaded that Shaulis's accusations were not susceptible to a non-defamatory meaning. Defamation (or libel) *per se* refers to a statement that is "not susceptible

[to] a nondefamatory interpretation." *Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 N.J. 451, 459–60 (1982). "'[T]he critical inquiry is whether the statement in question is defamatory on its face and, therefore, actionable without further factual support." *Yang v. Lin*, C.A. No. 19-8534, 2022 WL 2389300, at *9 (D.N.J. July 1, 2022) (citation omitted). "Words that clearly 'sound to the disreputation' of an individual are defamatory on their face," *id*. (quoting *Lawrence*, 89 N.J. at 459), including statements "falsely attributing criminality to an individual," *Kenny*, 205 N.J. at 293. Accusations of insurance fraud and warning to avoid a party's business have been found defamatory *per se*. *Sylvan Dental, P.A.*, 2021 WL 3671164, at *8. So have statements to potential investors alleging an executive's "track record" of "serious ethical, if not criminal, breaches" at his previous company "follow[ed] him" to his new company. *NuWave Inv. Corp. v. Hyman Beck & Co, Inc.*, 432 N.J.Super. 539, 549–50, 553–54 (App. Div. 2013).

In the SCAM Post, Shaulis labeled PAC a "scam." Compl. ¶ 29, Ex. B. Merriam-Webster defines "scam" as "a fraudulent or deceptive act or operation."[6] Thus, calling PAC a "scam" clearly "sound[s] to the disreputation" of PAC by conveying to reasonable readers that PAC is an illegitimate, fraudulent scheme that deceives athletes. Compl. ¶¶ 29, 67, Ex. B.

Similarly, the X Post's assertion that Paucek was the "consummate con man" clearly "sound[s] to the disreputation" of Paucek by conveying to reasonable readers that he deceives others into giving him their money. Compl. ¶¶ 27, 55. Merriam-Webster defines "con man" as "a person who tricks other people in order to get their money."[7]

Further, in the SCAM Post, Shaulis asserted that Paucek has a "track record as an unethical businessperson," conveying to reasonable readers that Paucek was found to have

[6] *Scam*, MERRIAM-WEBSTER: DICTIONARY (last visited June 18, 2025), available at https://www.merriam-webster.com/dictionary/scam#dictionary-entry-1.

[7] *Con Man*, MERRIAM-WEBSTER: DICTIONARY (last visited June 18, 2025), available at https://www.merriam-webster.com/dictionary/con%20man.

previously engaged in unethical business practices and that he is engaging in similar practices at PAC. Compl. ¶¶ 30, 55. Discussing one's "track record" in connection with accusations of previous misconduct has an unmistakable meaning.[8]

Even without considering other facts, the Shaulis Posts constitute an attack on Plaintiffs' business reputations and are defamatory on their face. Thus, Shaulis's pure opinion defense fails.

#### 2. Even If Not Defamatory *Per Se*, the Shaulis Posts Are Reasonably Susceptible to Defamatory Meaning

To the extent the challenged statements were not defamatory *per se*, they were nonetheless reasonably susceptible to defamatory meaning. "[C]ourts must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement." *DeAngelis v. Hill*, 180 N.J. 1, 14 (2004) (citation omitted). This is a "fact-specific" inquiry. *Churchill Downs, Inc. NLR Entm't, LLC v. Carstanjen*, Civ. No. 14–03342, 2015 WL 5854134, at *8 (D.N.J. Oct. 5, 2015) ("*Churchill Downs, Inc.*").

"The 'content' analysis requires courts to consider the "fair and natural meaning that will be given [to the statement] by reasonable persons." *DeAngelis*, 180 N.J. at 14 (citations omitted) Verifiability requires determining whether the statement was one of fact or opinion.[9] *Id*. Finally, courts must consider the surrounding context, such as "'the identity of the speaker and the targeted audience.'" *Jevremovic v. Courville*, C.A. No. 22-4969, 2023 WL 5127332, at *5 (D.N.J. Aug. 10, 2023) (quoting *Senna*, 196 N.J. at 492–93).

As stated, statements to potential investors alleging that an executive's "track record" of "serious ethical, if not criminal, breaches" at his previous company "follow[ed] him" to his new

[8] *See Track Record*, MERRIAM-WEBSTER: DICTIONARY (last visited June 18, 2025), available at https://www.merriam-webster.com/dictionary/track%20record.

[9] However, as detailed in Section I.B.3 below, even an opinion can be actionable where, as here, it implies false underlying objective facts that were not disclosed to readers. *See Ward v. Zelikovsky*, 136 N.J. 516, 531 (1994).

company have been found defamatory. *NuWave Inv. Corp.*, 432 N.J.Super. at 549–50, 553–54. And "particularly … in the context of identified business dealings," courts have refused to dismiss defamation claims involving similar accusations that someone was a "fraud," "thief," and "untrustworthy" because such statements can be verifiable and thus defamatory. *Churchill Downs, Inc.*, 2015 WL 5854134, at *8.

Likewise, the context in which the terms "scam," "con man," and "unethical" are published governs whether they qualify as protected opinion. Courts only find such statements protected opinion when they are used in a loose, figurative manner and are accompanied by sarcasm, personal insults, questions, or other statements of opinion. *See McCabe v. Rattiner*, 814 F.2d 839, 840–44 (1st Cir. 1987); *Roberts v. Mintz*, No. A-1563-14T4, 2016 WL 3981128, at *6–7 (N.J. Super. App. Div. July 26, 2016); *Creditors Relief LLC v. United Debt Settlement LLC*, C.A. No. 17-7474, 2019 WL 7288978, at *11 (D.N.J. Dec. 30, 2019); *Redmond v. Gawker Media, LLC*, No. A132785, 2012 WL 3243507, at *6–7 (Cal. App. Ct. Aug. 10, 2012). Shaulis argues that *McCabe* and *Redmond* hold that calling a business a "scam" is quintessential protected opinion. But both cases emphasized context. The use of the term "scam" in *McCabe* was based on a personal encounter written in "first person narrative style" and "closed with a series of questions." *McCabe*, 814 F.2d at 840–44. The article in *Redmond* was "written in a casual first-person style," with "the tone and style of a sarcastic product or movie review," its conclusions "couched in" qualifying language, and complete transparency concerning the sources relied upon. *Redmond*, 2012 WL 3243507, at *6–7. These cases do not stand for the proposition that terms like "scam" are protected opinion as Shaulis suggests.

Indeed, courts refuse to find such terms to be protected opinion when they are used in specific allegations and without sarcasm, personal insults, questions, or other statements of

opinion. *See Dill v. Yellin*, 725 F.Supp.3d 471, 486–88 (D.N.J. 2024) (distinguishing *Roberts* to find "level-headed and well thought-out" accusations of fraud and theft, without "emotional or profanity-laden language, personal insults, or sarcasm," were not protected opinion); *Shadle v. Nexstar Broad. Grp., Inc.*, No. 3:13-CV-2169, 2016 WL 7325509, at *4–5 (M.D. Pa. Aug. 31, 2016) (distinguishing *McCabe* because, in context, labeling plaintiff a "scam artist" and his business a "scam" implied the operation of a "shady business" that defrauded and deceived customers); *Levy v. Nissani*, 179 A.D.3d 656, 659 (N.Y. Supr. Ct. App. Div. 2020) (emphasizing context, including recommendation not to do business with plaintiffs, to find "scammers or con artists" accusation was not protected opinion).

Here, Shaulis's specific, "level-headed," and "well thought-out" accusations were verifiable factual assertions, not unverifiable opinions. *Dill*, 725 F.Supp.3d at 486–88. Whether PAC is a "scam" that defrauds or misrepresents its services to professional athletes can be verified. Compl. ¶¶ 29, 65; *see also Shadle*, 2016 WL 7325509, at *4–5. One can also verify Shaulis's accusation that Paucek was "the consummate con man" who now deceives professional athletes into giving their money to Plaintiffs. Compl. ¶¶ 27, 53; *see also Churchill Downs, Inc.*, 2015 WL 5854134, at *8. Further, Shaulis's accusation that Paucek has a "track record" of being "unethical" in his business practices is likewise verifiable and underscores the verifiability of Shaulis's other accusations. Compl. ¶¶ 30, 53; *see also NuWave Inv. Corp.*, 432 N.J.Super. at 553–54.

The context confirms this. *See First Nat'l Prop. Mgmt., LLC v. Chapman*, C.A. No. 23-00603, 2024 WL 230115, at *3–4 (D.N.J. Jan. 22, 2024) (directing allegations of illegal activity to plaintiffs' investors indicated defamatory meaning). While claiming to be in the midst of "an extensive investigation" into Plaintiffs, Shaulis published a "SCAM ALERT" that publicly

leveled accusations against them—addressed to professional athletes on the eve of PAC's business event—before completing that investigation. Compl. ¶¶ 28–33, Ex. B. And even before that, Shaulis publicly announced the "need" for PAC's business associate to "investigate" Paucek and his "latest scheme." *Id.* ¶ 27, Ex. A. In context, the Shaulis Posts thus convey the unequivocal factual message that—according to Shaulis's undisclosed findings—Paucek is perpetuating a fraud through PAC. *Id.* ¶¶ 27–33; *see also Shadle,* 2016 WL 7325509, at *4–5.

Nothing in the Shaulis Posts indicated that Shaulis was expressing his opinion. The Shaulis Posts were written in a formal style and tone, failed to include any qualifying language, and came within the broader context of Shaulis's purported factual analysis, yet omitted meaningful factual support despite implying the existence thereof. *See Redmond*, 2012 WL 3243507, at *6–7 (emphasizing contextual elements). The Shaulis Posts also contained no sarcasm, personal insults, profanity, questions, or other statements signifying opinion. *See Dill*, 725 F.Supp.3d at 486–88. Shaulis's contention that the SCAM Post "address[ed] an audience of readers interested in higher education issues" is flatly contradicted by the plain language of the SCAM Post, which "put[s] out a warning to … professional athletes who may be contacted by [PAC]." Compl. ¶ 33, Ex. B. Likewise, readers' comments to the Shaulis Posts flatly contradict Shaulis's claim that reasonable readers would interpret them as his opinion. *Id.* ¶¶ 37–38.

Shaulis's accusations of fraudulent and unlawful business practices are reasonably susceptible to defamatory meaning. Dismissal is thus improper, notwithstanding the possibility of less severe interpretations. *See First Nat'l Prop. Mgmt., LLC*, 2024 WL 230115, at *5.

### 3. Even If Opinion, the Shaulis Posts Are Actionable Mixed Opinions

To the extent Shaulis's accusations qualify as opinion, they are nonetheless actionable as mixed opinions. Even "an opinion is actionable if 'it implies "reasonably specific assertions" of "underlying objective facts that are false."'" *Roberts*, 2016 WL 3981128, at *5 (quoting *Ward*,

136 N.J. at 531); *see also Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 372–73 (D.N.J. 2004) (statements were mixed opinion where they "contain[ed] certain underlying factual assertions"). When it comes to business practices, "'there can be little doubt that a person who hears someone criticizing another's job performance would presume that the person doling out the disparaging comments possessed knowledge of some facts on which to base that criticism.'" *Mzamane v. Winfrey*, 693 F.Supp.2d 442, 482 (E.D. Pa. 2010) (citation omitted).

Courts have found actionable similar statements published without disclosure of underlying facts. *See Mangan*, 834 F.Supp.2d at 205 (allegations that former CEO engaged in "financial improprieties" and misled employees were mixed opinion); *Biro v. Conde Nast*, 883 F.Supp.2d 441, 462 (S.D.N.Y. 2012) ("classic con man" statement was mixed opinion); *Technovate LLC v. Fanelli*, No. 003713/15, 2015 WL 5554547, at *6 (N.Y. Civ. Ct. Sept. 10, 2015) ("scam" and "con artist" statements were mixed opinion); *Levy,* 179 A.D.3d at 659 (same).

In the SCAM Post, Shaulis conceded that he withheld the purported facts supporting his accusations. Shaulis "ask[ed] those who have been contacted [by PAC] … to let [Shaulis] know what promises may be said on the back stage," and in return Shaulis promised to "***share with you what we know***." Compl. ¶ 33, Ex. B. Substituting attorney palaver for the text of the SCAM Post, Shaulis claims readers "would not assume that [he] has access to some undisclosed factual bombshell" and that he merely promised to share "details of [his] investigation once it has occurred." Shaulis Motion at 13, 14, ECF No. 47. But Shaulis's promise to share undisclosed facts immediately followed his request that PAC's clients let Shaulis know the details of their discussions with Plaintiffs. Compl. at Ex. B. Regardless, Shaulis's speculation about his readers' unstated understanding belies their stated understanding (*id*. ¶¶ 37–38) and cannot be considered because Shaulis is not entitled to reasonable inferences of fact in his favor at this stage.

The only statement in the SCAM Post that could be construed as factual support for Shaulis's accusations is that Paucek "dr[ove] another company, 2U, to near failure." *Id*. at Ex. B. Putting aside that statement's inaccuracy, Shaulis fails to explain—both to readers and now the Court—how those events relate to PAC or Paucek's role as its Co-CEO. PAC is a different company, operated by different executives, offering different services to different customers.[10]

However, Shaulis's attacks on Plaintiffs' legitimacy and business practices appeared to reasonable readers as having factual support. Compl. ¶¶ 37–38; *see also Mzamane*, 693 F.Supp.2d at 482; *Mangan*, 834 F.Supp.2d at 205. Such readers would understand that Shaulis's accusations that Paucek was the "consummate con man" and had a "track record" of being "unethical" were based on his knowledge of Paucek deceiving certain individuals and/or being found by a court (or other factfinder) to have acted unethically. Compl. ¶¶ 27, 30, 37–38. They would likewise understand that Shaulis labeled PAC a "scam" because he knew that PAC defrauded certain athletes by promising but failing to deliver certain services. Compl. ¶¶ 29, 37–38. Because Shaulis did not supply underlying facts supporting these accusations, reasonable readers would need to fill in the gaps with that understanding. Such underlying facts—while implied—do not exist, as revealed by Shaulis's promise to share them only after professional athletes disclose their discussions with Plaintiffs. *Id*. at Ex. B.

Accordingly, even to the extent Shaulis's accusations can be read to somehow express an opinion, they are nonetheless actionable as mixed opinion and Shaulis's argument must fail.

[10] Similarly, the only underlying fact disclosed by the X Post was that Paucek has been involved with each of PAC, 2U, and Hooked on Phonics. *See* Compl. at Ex. A. That disclosure pales in comparison to Shaulis's accusations in the X Post: that Paucek was the "consummate con man" and PAC was his "newest scheme." *Id*. ¶ 27, Ex. A.

### C. The Shaulis Posts Did Not Involve Matters of Public Concern

Shaulis argues that the Shaulis Posts involve "matters of public concern" such that Plaintiffs must plead actual malice (and the NJ UPEPA applies). Shaulis Motion at 6–7, 17, ECF No. 47. Shaulis suggests that ***any*** allegation against ***any*** company offering services to the public involves a matter of public concern. *Id*. at 6–7. PAC does not offer its services to the general public; its offerings are only available to professional athletes, a very small group. Compl. ¶ 21. More important, both California and New Jersey law call for a case-by-case analysis informed by the content and context of the allegation, and the nature of the company.

"Obviously, not every act of fraud is a matter of public interest." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal.App.4th 141, 151 (2013). Shaulis contends that because Plaintiffs solicit athletes and tout PAC's programs, the Shaulis Posts involve a matter of public concern. Under that interpretation, any business—public or private—is involved in a matter of public concern and thus defamatory statements would be unactionable absent actual malice, no matter the nature and purpose of the statements, their relevancy to an issue discussed by the public, or the context. But that is not the law. *See Dubac v. Itkoff*, 101 Cal.App.5th 540, 548–49 (2024).

The California anti-SLAPP cases Shaulis cites involved dissimilar plaintiffs and publications. *Hoang v. Tran* involved a Vietnamese celebrity allegedly defamed by a social media article that provoked substantial public commentary. 60 Cal. App. 5th 513, 521–23, 527–29 (2021). And *Muddy Waters, LLC v. Superior Court* involved reports "detailing an investigation" into a publicly traded company and fraudulent sales inflation. 62 Cal. App. 5th 905, 912–13, 917–19 (2021). "'[W]hether the company is publicly traded'" is a "'pertinent factor.'" *Summit Bank v. Rogers*, 206 Cal.App.4th 669, 694 (2012) (citation omitted). Paucek is not a celebrity and PAC is not a publicly traded company. Further, Shaulis did not detail his

investigation into Plaintiffs or any other facts supporting his accusations, and the Shaulis Posts did not provoke substantial public commentary.

Other California cases "stress the significance of how many people are affected by, or are interested in, a purportedly public issue." *Dubac*, 101 Cal.App.5th at 549. Context is also important, including the audience and the purpose and timing of the communication. *Id*. (citation omitted). "***The ultimate question is whether a statement 'furthered public discussion of the public issues it implicated***.'" *Id*. (citation omitted) (emphasis added).

The New Jersey Supreme Court also undertakes a fact-specific contextual inquiry in determining whether the actual malice standard applies:

> When published by a media or media-related defendant, a news story concerning … allegations of criminal or consumer fraud … will, by definition, involve a matter of public interest or concern. [*See Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 410, 413 (1995)]. In all other media and non-media cases, … a court should consider the content, form, and context of the speech.

*Senna*, 196 N.J. at 496–97.[11] In *Turf Lawnmower*, the New Jersey Supreme Court held that a newspaper's article detailing widespread consumer fraud in the plaintiff's business involved a matter of public concern because the uncontradicted allegations therein, if true, violated the Consumer Fraud Act. 139 N.J. at 427 (citing N.J.S.A. § 56:8–1 *et seq*.).

Crucially, however, *Turf Lawnmower* explained that not every allegation of consumer fraud suffices: "[w]hat constitutes consumer fraud depends … generally on whether the alleged activities of the [plaintiff] would constitute a cause of action under the Consumer Fraud Act." *Id*. at 416–17. Thus, the actual malice standard only applies "[i]f, drawing all reasonable and normal inferences, ***the article reads fairly and describes conduct, activities, and events that would lead***

[11] The New Jersey Supreme Court's refusal to apply the newsperson's privilege under the Shield Law, N.J.S.A. § 2A:84A-21 *et seq*., to the blogger in *Too Much Media, LLC v. Hale* weighs against finding Shaulis to qualify as a media or media-related defendant, especially at this stage and without discovery. 206 N.J. 209, 237, 242 (2011).

***an average reader to conclude*** that the owner engaged in business practices that were unconscionable, deceptive, misleading, or reflect in bad faith ….” *Id.* at 417 (emphasis added).

Thus, *Turf Lawnmower* is inapposite. The article there included a summary of customer complaints and the defendants' own experiences with plaintiff, *id.* at 418–423, whereas the Shaulis Posts lack any such factual support. Compl. ¶ 40. Absent from the Shaulis Posts is a single complaint from any professional athlete or PAC business associate, Shaulis's personal experience with Plaintiffs, or any other "conduct, activities, or events that would lead an average reader to conclude that [Plaintiffs] engaged in" fraud or similar misconduct. *Turf Lawnmower*, 139 N.J. at 417. Shaulis never spoke with professional athletes or PAC's business associates. Compl. ¶ 40. He also admits to having no personal experience with Paucek.[12] *See* Shaulis Motion at 18, ECF No. 47. Further, the allegations in *Turf Lawnmower* were "uncontradicted," 139 N.J. at 423, whereas Shaulis's accusations are contradicted. Compl. ¶¶ 18–21, 23–24.

In *W.J.A. v. D.A.*, the New Jersey Supreme Court refused to find a matter of public concern, emphasizing context: namely, "the speaker's status, ability to exercise due care, and targeted audience." 210 N.J. 229, 245–46 (2012). It reasoned the defendant "had the ability to exercise due care when making his statements, but chose instead to publish them" publicly. *Id.* at 245. Further, the defendant's "desire to publish the Internet statements to the entire country and the fact that the statements refer to previous court proceedings do not necessarily make his allegations a matter of public [concern]." *Id.* Likewise, here, the context confirms the Shaulis Posts did not involve a matter of public concern. Shaulis, as co-editor, could exercise due care. Compl. ¶ 8. Yet he chose to level bare accusations before completing his "extensive investigation" into Plaintiffs. *Id.* ¶¶ 27–33. Shaulis described the SCAM Post as a "warning" to

[12] If Shaulis seeks to incorporate complaints from former 2U employees as factual support, not only were those unstated, but *Turf Lawnmower* cautions against such complaints supporting allegations of fraud. 139 N.J. at 431.

PAC's existing and potential clients, not some broader audience.[13] *Id.* ¶ 33. And even if prior 2U lawsuits were in any way relevant to PAC, that does not necessarily make Shaulis' commentary on those cases a matter of public concern. *W.J.A.*, 210 N.J. at 245.

At bottom, there was—and continues to be—no public interest in or discussion of the topics addressed by the Shaulis Posts: the legitimacy of PAC and Paucek's role as its Co-CEO. Shaulis cannot create a matter of public concern on topics with which the public is not concerned. That is underscored by the lack of public commentary on these issues even after the Shaulis Posts. Thus, the Shaulis Posts do not involve a matter of public concern, the NJ UPEPA does not apply, and Plaintiffs were not required to plead actual malice on this ground.

### D. Paucek is Not a Public Figure

Shaulis's argument that Paucek is a "public figure"[14] fails because there was no preexisting "public controversy" involving Paucek in his role as PAC's Co-CEO. Plaintiffs "involved in a public controversy become limited purpose public figures … when they have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Diaz v. Bd. of Educ. of the Tp. of S. Brunswick*, No. 05–4667, 2006 WL 3490339, at *2 (D.N.J. Dec. 1, 2006) (quotation omitted).

Courts "must consider (1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of Plaintiff's involvement in that controversy." *Id.* (quotation

---

[13] The X Post was directed at the Miami Dolphins, one of PAC's business associates. Compl. at Ex. A ("Jason, you guys in Miami need to investigate Chip Paucek and his latest scheme, [PAC]."); *see also id*. at Ex. B (referencing PAC's work with the Miami Dolphins).

[14] To the extent Shaulis argues that Paucek is a general public figure, that argument must fail. There is an absence of clear evidence of Paucek's general fame in the community and pervasive involvement in public affairs. *Gertz v. Robert Welch, Inc.* 418 U.S. 323, 352 (1974). Paucek, like typical corporate executives, was not a household name and did not receive a comparable amount of publicity as the well-known individuals that courts have found to so qualify. *See Waldbaum v. Fairchild Pub'ns, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980) (former CEO did not qualify); *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) (President of Mobil Oil Company did not qualify).

omitted). This inquiry is "fact-specific" and often inappropriate to undertake at this stage. *Lombardo v. Leonard*, No. 2:24-cv-01711, 2025 WL 904373, at *7 (E.D. Pa. Mar. 25, 2025).

The first step is to define the "contours" of the public controversy by examining whether the public was "discussing some specific question." *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296–97 (D.C. Cir. 1980). There "must be a real dispute, the outcome of which affects the general public or some segment of it" beyond "its immediate participants." *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1083 (3d Cir. 1985). A "general concern or interest" and "[n]ewsworthiness alone" are insufficient. *Waldbaum*, 627 F.2d at 1296–97 (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)); *see also Marcone*, 754 F.2d at 1083.

Importantly, defendants "cannot, by their own conduct, create their own defense by making the [plaintiff] a public figure." *Hutchinson*, 443 U.S. at 135; *see also Wells v. Liddy*, 186 F.3d 505, 534 (4th Cir. 1999). Thus, allegations of fraud or similar misconduct can constitute a public controversy, but only where those allegations and associated publicity **predate** the defendant's publication. *See Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 273–74 (3d Cir. 1980); *Orr v. Argus-Press Co.,* 586 F.2d 1108, 1116–17 (6th Cir. 1978).

Courts decline to confer public figure status where the publication is insufficiently related to a preexisting public controversy. *See Waldbaum*, 627 F.2d at 1298 ("[m]isstatements wholly unrelated to the [public] controversy" not subject to actual malice standard); *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 687 (4th Cir. 1989) (bank not a public figure due to "the absence of a correlation between [its] promotional efforts and defendant's publication"); *Roffman v. Trump*, 754 F.Supp. 411, 417–18 (E.D. Pa. 1990) (publication insufficiently related to controversy).

Shaulis cannot manufacture a preexisting public controversy despite his multiple attempts. Shaulis's first attempt—"the propriety of for-profit educational ventures and their

treatment of consumers" (ECF No. 47 at 21)—is far too broad.[15] This is akin to an insufficient "general concern or interest." *Waldbaum*, 627 F.2d at 1297. Shaulis's definition makes clear that he is trying to take unproven allegations against 2U and horn them into a discussion about PAC.[16] 2U and PAC are completely different companies. Thus, any public controversy arising from allegations against 2U involving its relationship with students and investors cannot extend to PAC and Paucek's role as its Co-CEO.

Shaulis's second attempt to define the public controversy as "issues related to [Paucek's] own business ventures" (ECF No. 47 at 20) is still too broad. "[I]ssues related to" a business venture could refer to almost any topic, from service offerings to customer relations, employee relations, leadership, and funding. Shaulis does not make any connection between alleged problems with 2U's business model and PAC's business model. Compl. ¶¶ 12–15, 17–21.

Nor does a sufficiently narrow definition save Shaulis's argument. There was no public debate over the "propriety" of PAC and Plaintiffs' "treatment" of professional athletes prior to the Shaulis Posts. The Court should reject Shaulis's contrived definitions of a public controversy.

Even if the Court accepts one of Shaulis's definitions, the Shaulis Posts cannot be fairly read as commenting on that public controversy. The Shaulis Posts "warn[ ]" professional athletes to avoid Plaintiffs and request that PAC's business associate "investigate" Plaintiffs. Compl. ¶¶ 27–33. The SCAM Post cites PAC's upcoming "live sessions" in Austin, Texas, with the unmistakable implication that professional athletes should steer clear. *Id.* at Ex. B. Tellingly, Shaulis does not detail Paucek's past business ventures, any poor "treatment" of athletes, or even

---

[15] For example, "consumers" encompasses prospective students, students, alumni, visitors, investors, and others. "[T]reatment" encompasses the quality and/or fairness of admissions, courses, faculty, accommodations, facilities, events, alumni relations, student funding, repayment options, etc.

[16] This is confirmed by Shaulis's two examples of "consumers": "students," meaning 2U's customers; and "athletes," meaning PAC's clients. Shaulis Motion at 21, ECF No. 47.

why athletes should be wary of Plaintiffs. *Id*. at Ex. A, Ex. B. Shaulis only promises "to share … what we know" about Plaintiffs with those athletes who contact him. *Id*. at Ex. B.

As for Paucek's involvement, merely serving as a company executive does not transform the executive into a public figure, even for comment on a public controversy involving the company. *See Waldbaum*, 627 F.2d at 1299; *Dixson v. Newsweek, Inc.*, 562 F.2d 626, 628 (10th Cir. 1977). Rather, courts generally require substantial involvement in the practices at the heart of the public controversy and use of the media to influence the resolution. *See Schiavone Const. Co. v. Time, Inc.*, 619 F.Supp. 684, 704–07 (D.N.J. 1985); *Carr v. Forbes, Inc.*, 259 F.3d 273, 279–82 (4th Cir. 2001).

Paucek's position as PAC's Co-CEO does not render him a public figure. Paucek is not solely in charge of PAC's activities. He shares decision-making authority with the rest of PAC's executive team. Nor did Paucek publicly advocate for the "propriety" of PAC or its "treatment" of professional athletes outside of general advertising and promotion of PAC.

Similarly, "[n]either the mere involvement in litigation nor the associated publicity … is sufficient to turn litigants into public figures." *Trans World Accts., Inc. v. Associated Press*, 425 F.Supp. 814, 820 (N.D. Cal. 1977) (citing *Time, Inc. v. Firestone*, 424 U.S. 448, 456–57 (1976)). Rather, involvement in a lawsuit or regulatory investigation of concern to the public may transform an individual into a public figure for comment ***on "the limited range of issues relating to" that lawsuit or investigation***. *Id*. (emphasis added). That status does not extend to other issues. *See Nanavati v. Burdette Tomlin Mem'l Hosp.*, 645 F.Supp. 1217, 1251 (D.N.J. 1986).

That Paucek was named in lawsuits against 2U does not render him a public figure. Paucek did not publicly respond to any of those lawsuits. More important, Shaulis's extension of those lawsuits to Paucek's current role at PAC is contrary to salient case law. Importing a

controversy involving one company to leadership of an entirely different company conflates limited-purpose public figures and general public figures. Only the latter's fame permits "'transfer[ing] their recognition and influence from one field to another.'" *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) (quoting *Waldbaum*, 627 F.2d at 1294, n.15). Thus, Paucek is not a public figure and actual malice need not be pleaded or proved here.

**E. Plaintiffs Have Adequately Pleaded Actual Malice**

Even if Plaintiffs are required to plead actual malice, Plaintiffs have done so. Shaulis latches on to Plaintiffs' recitation of the legal standard but ignores their supporting factual allegations. Compl. ¶¶ 1, 4, 26, 41, 43–47. These allegations are supported by, *inter alia*, the content and context of the Shaulis Posts. *Id*. ¶¶ 27–34. Taken together, they support a reasonable inference that Shaulis recklessly disregarded the truth by investigating Plaintiffs and purposely ignoring the contradictory information he found in favor of publishing his false accusations.

The actual malice standard requires clear and convincing evidence that the defendant published the statement with at least a reckless disregard for the truth. *See Durando v. Nutley Sun*, 209 N.J. 235, 249–52 (2012). Shaulis's stilted characterization of *Neuwirth v. State* (ECF No. 47 at 17–20) omits *Neuwirth*'s discussion concerning when and how a plaintiff can show reckless publication to satisfy the standard. 476 N.J.Super. 377, 392 (2023).

The allegations of actual malice in *Neuwirth* were not tested for sufficiency under the federal pleading standard. *See Mangan*, 834 F.Supp.2d at 203–04, n.2 ("[T]he specificity with which a defamation claim brought in federal court must be pled is defined by [FRCP] 8 ….").
Under the federal pleading standard, "'generic allegation[s]' of the defendant's state of mind [are] sufficient to survive a motion to dismiss because 'a party's state of mind often cannot be demonstrated directly,' so '[m]alice ... may be alleged generally.'" *Mayer v. Mayer*, No. CV232272GCJBD, 2024 WL 1283826, at *5 (D.N.J. Mar. 26, 2024) (citing *Churchill Downs,*

*Inc.*, 2015 WL 5854134, at *9). No court in this district has cited *Neuwirth*, and at least two courts have applied the appropriate *Churchill Downs* standard after *Neuwirth* was decided. *Id.*; *see also First Nat'l Prop. Mgmt., LLC*, 2024 WL 230115, at *3.

Shaulis also omits *Neuwirth*'s explanation that "[a] finding of reckless publication … may result if the publisher fabricates a story, publishes one that is wholly unbelievable, or relies on an informant of dubious veracity …, or ***purposely avoids the truth …***." *Neuwirth*, 476 N.J.Super. at 392 (quotation omitted) (emphasis added). Similarly, the New Jersey Supreme Court has explained:

> Although the actual-malice standard is difficult to meet, a plaintiff will satisfy that standard—***despite an editor's professions of good faith***—if he can show a story was 'fabricated by the defendant[ ] [or] is the product of his imagination ….' [*St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)]. ***Likewise, a publisher will not 'prevail' when his 'allegations are so inherently improbable that only a reckless man would have put them in circulation***' or when 'there are obvious reasons to doubt the veracity of [an] informant or the accuracy of his reports.' ....

*Durando*, 209 N.J. at 252 (emphasis added).

Allegations that the defendant found "apparently reliable information that contradicts its libelous assertions, but nevertheless publishe[d] those statements anyway[,]" suffice to plead actual malice. *Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1988). So do allegations that the defendant fabricated the challenged statements. *See Pistilli-Leopardi v. MediaNews Grp., Inc.*, No. A-0086-18T1, 2020 WL 3967992, at *5–7 (N.J. Super. App. Div. July 14, 2020); *see also Bajardi v. Pincus*, Nos. A-5668-14T4, A-5729-14T4, A-5745-14T4, 2019 WL 3521847, at *24 (N.J. Super. App. Div. Aug. 2, 2019) (finding actual malice where defendant's statement had "no basis in fact" and she "had no knowledge" whether it was true).

Here, unlike in *Neuwirth*, Plaintiffs do not rely on a "rote recitation" of the legal standard without factual support. Rather, Plaintiffs allege many facts that, especially when taken together, support a reasonable inference that Shaulis recklessly disregarded the truth. *First*, Plaintiffs

alleged that Shaulis's purpose was not to exercise his First Amendment rights (*i.e.*, what the actual malice standard protects) but rather "to destroy the well-earned reputations of Plaintiffs and interfere with PAC's prospective business opportunities." Compl. ¶ 1. *Second*, Plaintiffs alleged that Shaulis both "disregarded an abundance of evidence contradicting" his accusations and chose to omit his purported factual support for those accusations. Compl. ¶¶ 40–41. Even a cursory reading of the Shaulis Posts makes clear that this was not a "[m]ere failure to investigate all sources[.]" *Neuwirth*, 476 N.J.Super. at 393 (quotation omitted). Rather, the content and context of the Shaulis Posts reveal that Shaulis did investigate and purposely ignored contradictory materials when publishing his false accusations. Compl. ¶¶ 27–33, Ex. A, Ex. B.

Shaulis cannot claim to have been unaware of materials directly contradicting his accusations. To the contrary, Shaulis linked to and embedded contradictory materials in the SCAM Post.[17] Compl. at Ex. B. The *Next Chapter Podcast*, *PAC Sizzle* video, *The New Playbook* video, and the PAC website testimonials all relate positive experiences with PAC, and in some cases provide detailed facts about how PAC made the athlete "a better me."

Moreover, Shaulis directed the SCAM Post at PAC's upcoming business combine in Austin, Texas. Compl. at Ex B. The SCAM Post also notes PAC's "work[ ]" with both the Miami Dolphins and the University of Miami's Herbert Business School. *Id*. All of this supports the reasonable inference that Shaulis's accusations had no basis in fact and were so inherently improbable that only a reckless person would have put them in circulation. *See Durando*, 209

[17] The linked videos do not alter Plaintiffs' mixed opinion argument in Section I.B.3. Shaulis concedes that he withheld his purported factual support from readers (Compl. at Ex. B). The Shaulis Posts leave reasonable readers with questions and an insufficient factual background to answer them, including: who Paucek deceived; in what unethical business practices Paucek engaged; where he was found to have acted improperly; which aspects of PAC's business were supposedly fraudulent; and whether any professional athletes were defrauded by Plaintiffs. None of those questions can be answered by these videos.

N.J. at 252. And Shaulis purposely avoided the truth by ignoring known materials that directly contradicted his accusations. *See Neuwirth*, 476 N.J.Super. at 392.

*Third*, Shaulis's publication of the Amplifying Post—after being on notice that his accusations in the SCAM Post were false—further supports a reasonable inference of actual malice. *See* Compl. ¶¶ 4, 38, 43–47. While a passive refusal to retract may not be persuasive evidence of actual malice (Shaulis Motion at 26, ECF No. 47), that is a far cry from Shaulis affirmatively publishing a new blog post to support and reinforce his earlier false accusations.

Shaulis's claims of good faith cannot overcome his conduct. *Durando*, 209 N.J. at 252. Regarding his purported factual support, the motion to dismiss opinion in the now-settled securities class action against 2U did not transform those third-party allegations into proven facts. And Shaulis had obvious reasons to doubt the veracity of message board posts by what are at best disgruntled former 2U employees. *See Turf Lawnmower*, 139 N.J. at 420.

Shaulis's reckless publication of accusations against Plaintiffs in the Shaulis Posts "approach[ed] the level of publishing a 'knowing, calculated falsehood.'" *Neuwirth*, 476 N.J.Super. at 392 (quoting *Lawrence*, 89 N.J. at 466). Accordingly, Shaulis's actual malice argument fails and Plaintiffs' defamation claims must survive.

## II. PAC STATES A PLAUSIBLE CLAIM FOR TORTIOUS INTERFERENCE

The elements of a TIPBR claim under New Jersey law are: "(1) 'a prospective economic or contractual relationship,' (2) interference 'inflicted intentionally and without justification or excuse'; (3) 'causation'; and (4) 'damages.'" *8600 Landis, LLC v. City of Sea Isle City*, Civ. No. 17–2234, 2018 WL 1509088, at *6 (D.N.J. Mar. 27, 2018) (citation omitted). PAC's TIPBR claim arises out of Shaulis directing the Shaulis Posts at PAC's clients and business associates. Compl. ¶¶ 75–82. Shaulis nonetheless seeks dismissal on several grounds, each of which fails.

*First*, PAC relying in part on the defamatory nature of the Shaulis Posts to establish Shaulis's wrongful conduct does not mean this is "a repackaged defamation claim" (ECF No. 47 at 23). *See Minuto v. Genesis Advisory Servs., Inc.*, C.A. No. 11–3391, 2012 WL 1085807, at *10 (D.N.J. Mar. 29, 2012) (relying on allegedly defamatory statements to plead wrongful conduct sufficed at motion to dismiss stage). Wrongful conduct includes defamation, deceit, and misrepresentation. *See Sunbelt Rentals, Inc. v. EquipmentShare.com Inc.*, No. 21-6511, 2021 WL 4311517, at *1 (D.N.J. Sept. 22, 2021). Regardless, PAC alleged that the SCAM Post also contained "several misleading statements" that dissuade professional athletes, industry experts, and educators from engaging with PAC. Compl. ¶¶ 31–34, Ex. B.

*Second*, Shaulis argues that PAC has not adequately pleaded damages resulting from his interference. New Jersey courts have found alleged reputational harm sufficient to survive a motion to dismiss. *See Heartland Payment Sys., LLC v. Carr*, No. 3:18-cv-09764, 2021 WL 302918, at *6–7 (D.N.J. Jan. 29, 2021); *NVR, Inc. v. Davern*, Civ. No. 15-5059, 2016 WL 7013459, at *4 (D.N.J. Nov. 30, 2016). PAC has adequately alleged reputational harm. Compl. ¶¶ 34, 78. PAC need not allege damages "with specificity" at this stage, at least where a reasonable expectation of economic advantage is alleged. *Minuto*, 2012 WL 1085807, at *10. PAC has adequately alleged a reasonable expectation of prospective business relationships. Compl. ¶¶ 19–24, 76–77. PAC also alleged that Shaulis's interference with those relationships resulted in economic damages. *See id*. ¶¶ 34–35, 78, 80. That suffices under *Minuto*.

Alternatively, the Court should permit discovery into the extent of PAC's damages rather than dismissing this claim. Shaulis possesses discoverable information regarding the extent to which professional athletes were in fact dissuaded from engaging with PAC. In the SCAM Post, Shaulis asked professional athletes to contact him and promised to "share … what we know"

with those who did. *Id.* ¶ 33, Ex. B. Thus, discovery is warranted. *See, e.g., N. Star Mgmt., Inc. v. Ins. Prof'ls, Inc.*, C.A. No. 12–cv–3839, 2013 WL 5334412, at *4 (D.N.J. Sept. 23, 2013).

*Third*, Shaulis argues that PAC failed to identify "a single prospective relationship or pending transaction that was interfered with." Shaulis Motion at 24, ECF No. 47. More recent cases explain that PAC is not required to name a specific prospective customer or contract that Shaulis interfered with at this stage. *See N. Star Mgmt., Inc.*, 2013 WL 5334412, at *4 (citation omitted); *Heartland Payment Sys., LLC*, 2021 WL 302918, at *7. Regardless, Shaulis ignores PAC's allegations identifying such prospective business relationships. As alleged, PAC has a reasonable probability of business opportunities with a defined community of professional athletes from certain sports leagues, including those from the NFL, NBA, MLB, and UFC. Compl. ¶¶ 21, 76. To the extent required, PAC also identified a subset of these professional athletes by name. *Id.* ¶¶ 23–24. The Court was able to leverage these allegations to identify other relevant professional athletes. *See* Opinion at 6, ECF No. 45.

To the extent the named professional athletes previously completed an executive education program offered by PAC, those programs are only the beginning of PAC's services. PAC continues to develop a broader community in which PAC (along with its members and business associates) provides ongoing mentorship and other support to professional athletes in their second careers. Through the Shaulis Posts, Shaulis has degraded the value of that community, thereby interfering with PAC's prospective relationships with professional athletes.

In addition, as alleged, PAC partners with the University of Miami's Herbert Business School "to offer executive education certificate programs…." Compl. ¶ 19. This allegation identifies one of the "recognized industry experts and educators" with whom PAC has a reasonable expectation of economic advantage. *Id.* ¶ 20.

The case Shaulis cites, *Eli Lilly and Co. v. Roussel Corp*., is inapposite. 23 F.Supp.2d 460, 493–94 (D.N.J. 1998). That plaintiff failed to allege that it had existing or potential business relationships with a specific third party. *Id*. Other cases finding this element unmet involved similar conclusory allegations. *See Novartis Pharms. Corp. v. Bausch & Lomb, Inc*., C.A. No. 07–5945, 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008) (Plaintiff failed to identify a single person "with whom it currently does business, or has the reasonable expectation of doing business in the future."); *Read v. Profeta*, No. 15-cv-2637, 2017 WL 123438, at *7 (D.N.J. Jan. 11, 2017) ("There are only vague allegations that [defendant] made statements to unidentified 'third parties' or interfered with [plaintiffs'] unspecified dealings with unnamed 'others.'"). These cases do not require or even favor dismissal here.

*Fourth*, Shaulis's argument that PAC has not alleged "that Shaulis had knowledge of any such relationships" is meritless. As this Court has explained, "[t]he Court is not aware of any requirement under New Jersey law that liability for [TIPBR] requires specific knowledge of a specific contract alleged to have been disrupted by a defendant's actions." *8600 Landis, LLC*, 2018 WL 1509088, at *6–7, n.13. In any event, the content of the Shaulis Posts plainly demonstrates such knowledge. *See* Compl. ¶¶ 32–33, 37, 47, Ex. A, Ex. B.

Through the Shaulis Posts, Shaulis directed defamatory accusations and misleading statements about Plaintiffs at PAC's clients and business associates with a motive to dissuade them from engaging with PAC. Shaulis's attempt to rewrite the facts in his favor (ECF No. 47 at 24) does not change what he wrote in the Shaulis Posts. PAC's TIPBR claim must survive.

## III. THE COURT SHOULD IGNORE SHAULIS'S IMMATERIAL ARGUMENTS

Shaulis rehashes his arguments concerning PAC's principal place of business (ECF No. 47 at 28–32). That issue has no bearing on Shaulis's challenges to the merits of Plaintiffs' claims

or his entitlement to attorneys' fees under the NJ UPEPA should he ultimately prevail. *See* N.J.S.A. § 2A:53A-58(1). Instead, Shaulis argues sanctions are warranted here. They are not.

Plaintiffs alleged in good faith that PAC's principal place of business was in Delaware with legal support. "Given the diffuse nature of PAC's executive operations, determining where its principal place of business is makes this one of the 'hard cases' predicted by the Supreme Court in *Hertz* …." Opinion at 43–44, ECF No. 45 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 95 (2010)). Existing caselaw "only helps a little bit" here. *Id*. at 44.

Courts' various approaches in these cases rendered application of the "nerve center" test to PAC unclear. *See* Katelyn L. Simmons, *Tackling Principal Place of Business Post-Pandemic: When Headquarters are Empty Boardrooms*, 18 CHARLESTON L. REV. 335, 350–365 (2023). One law review article even argues that corporations with only remote employees and no physical presence have no principal place of business. *See* Nicholas Hallock, *Distributing the Corporation's Brain: Principal Place of Business Without Physical Presence*, 2/5/2021 U. CHI. L. REV. ONLINE 1, 5–6, 9 (2021). Thus, Plaintiffs' assertions were warranted.

## IV. SHAULIS'S NJ UPEPA COUNTERCLAIM MUST BE DISMISSED

Finally, the Court held that Shaulis may not assert his request for relief under the NJ UPEPA (including its fee-shifting provision) as a counterclaim. *See* Opinion at 35–36, ECF No. 45. Shaulis's "counterclaim" (ECF No. 25 ¶¶ 97–182) must be dismissed under FRCP 12(c). *Id*.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Shaulis's Motion in its entirety and grant Plaintiffs' Cross-Motion to Dismiss.

Dated: June 23, 2025

*<u>/s/ Chad A. Rutkowski</u>*
Chad A. Rutkowski
Oren J. Warshavsky (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1735 Market Street, Suite 3300
Philadelphia, PA 19103-7501
Phone: 215.568.3100
Fax: 215.568.3439
Email: crutkowski@bakerlaw.com

*Attorneys for Plaintiffs* CHRISTOPHER "CHIP" PAUCEK and PRO ATHLETE COMMUNITY, INC.