[D.I. 101]
[D.I. 102]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CHRISTOPHER PAUCEK, also known
as CHIP, and PRO ATHLETE
COMMUNITY, INC.,

             Plaintiffs,

     v.

DAHN SHAULIS,

             Defendant.

Civil No. 24-9807 (RMB/AMD)

## ORDER

Presently before the Court are two motions to compel. Defendant, Dahn Shaulis, filed a motion [D.I. 101] seeking to compel Plaintiffs, Christopher Paucek and Pro Athlete Community, Inc. (hereinafter, "PAC"), to produce documents responsive to Defendant's document requests and for sanctions. In addition, Plaintiffs filed a motion [D.I. 102] seeking to compel Defendant to respond to Plaintiffs' document requests. Both motions are opposed.[1] The Court has considered the submissions of the parties

---

[1] Pursuant to Local Civil Rule 37.1(b)(3), when a party files a discovery motion, "no reply papers shall be allowed except with the permission of the Magistrate Judge." Defendant Shaulis requested leave to file a reply brief. (Letter from Christopher Serbagi, Esq. [D.I. 107], Mar. 27, 2026.) Plaintiffs opposed the request but asserted that if the Court grants leave for Defendant to file a reply brief, then Plaintiffs also seek to file a reply

and decides this matter pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow and for good cause shown, Defendant's motion to compel is denied, and Defendant is granted leave to serve a subpoena on 2U, Inc. as set forth herein. Plaintiffs' motion to compel is granted in part and denied in part.

By way of background, Plaintiffs filed this action alleging defamation and tortious interference with prospective business relations based on online posts by Defendant that are allegedly false and misleading. (*See generally* Compl. [D.I. 1], pp. 1-2, ¶ 1.) Specifically, Plaintiff Paucek contends that he was "overwhelmingly successful as an entrepreneur and business executive in the education industry." (*Id.* at p. 4, ¶ 12.) Plaintiffs aver that in 2008, Plaintiff Paucek co-founded 2U, Inc. (hereinafter, "2U"), an "education technology company that grew into one of the world's largest online education providers" under Plaintiff Paucek's "leadership as CEO." (*Id.* at p. 4, ¶ 15.) Plaintiffs assert that "[w]ith Mr. Paucek at the helm, 2U grew to nearly $1 billion in annual revenue, with the company reporting annual revenue of $963.1 million in 2022." (*Id.* at p. 5, ¶ 15.) Further, Plaintiffs assert that "[s]eeking to use his knowledge and experience to help professional athletes explore and pursue their next chapters, Mr. Paucek co-founded PAC in 2022 and

brief. (Letter from Chad A. Rutkowski, Esq. [D.I. 108], Mar. 30, 2026.) The Court decides this matter without reply briefs.

currently serves as Co-CEO of the company." (*Id.* at p. 5, ¶ 17.) Plaintiffs allege that in June 2024, Defendant published a social media post on "X" that purportedly "falsely accuses Mr. Paucek of being 'the consummate con man'" and, approximately two months later, published a blog post on Defendant's website titled "SCAM ALERT" which allegedly "falsely accuses Mr. Paucek of having a 'track record as an unethical businessperson[.]'" (*Id.* at p. 9, ¶¶ 27-30.)

Defendant filed an answer with a counterclaim under New Jersey's Uniform Public Expression Protection Act (hereinafter, "UPEPA"), N.J.S.A. § 2A:53A-49 *et seq.* Defendant avers in the counterclaim that "[f]or about six years, [Defendant] has investigated 2U (and its former CEO Plaintiff Paucek) and has reported these observations in his [] website[.]" (Answer and Counterclaim [D.I. 17], p. 13, ¶ 118.) Defendant contends that he has "researched SEC documents and earnings calls and spoken to experts in the field of higher education who know Mr. Paucek and have deep knowledge about his business practices." (*Id.* at p. 14, ¶ 119.) Defendant also asserts in the counterclaim that "[t]here have also been a number of lawsuits against 2U and Paucek, by shareholders and consumers, stemming from misrepresentations by Chip Paucek when he was the CEO of 2U." (*Id.* at p. 14, ¶ 121.) Moreover, Defendant identified in the counterclaim a number of press reports, news articles, and websites that purportedly

3

negatively reported on Plaintiff Paucek and his business practices. (*Id.* at pp. 19-25, ¶¶ 132-150.) Defendant asserts that his online posts reflect his "expression of his opinion of Paucek on a matter of public concern" and do not constitute defamation and, therefore, Plaintiffs' claims in this case purportedly fail "to set forth a cause of action[,]" thus purportedly warranting an award of costs and attorneys' fees under UPEPA. (*Id.* at pp. 33-34, ¶¶ 178-182.)

The case initially came before the District Judge for a pre-motion conference based on Defendant's proposed motion to dismiss the complaint and "for anti-SLAPP relief under New Jersey's Uniform Public Expression Protection Act, N.J.S.A. 2A:53A-49 *et seq.*" (Text Order [D.I. 11], Nov. 15, 2024.) In an Opinion dated May 6, 2025, the District Judge addressed as a threshold matter whether the UPEPA, a New Jersey statute, applies in federal court under the *Erie* doctrine.[2] (Op. [D.I. 45], May 6, 2025, pp. 14-28.) The District Judge concluded that although some provisions of the state statute conflict with the Federal Rules of Civil Procedure, the UPEPA's fee-shifting provision, which provides that a plaintiff must pay a defendant's attorney's fees and costs related to the filing of a motion pursuant to Federal Rules of Civil

---

[2] The District Court noted that "[t]he *Erie* doctrine provides that a federal court sitting in diversity applies state substantive law and federal procedural law." (Op. [D.I. 45], May 6, 2025, p. 14)(citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Procedure 12 or 56 if the defendant prevails on such motion, applies in federal court. (*Id.* at pp. 12, 19, 22.) The District Court stated that a defendant "can shift fees, costs and expenses, if he can successfully dismiss the complaint under Rule 12 or Rule 56." (*Id.* at p. 2.) In so finding, the District Judge expressly noted that UPEPA's presumption for a court to stay discovery conflicts with the Federal Rules of Civil Procedure, stating that the "'[d]iscovery-limiting aspects' of anti-SLAPP statutes do not apply in federal court because the Federal Rules 'reflect a policy of forcing a defendant to disclose adverse facts before he may challenge plaintiff's case for factual sufficiency.'" (*Id.* at pp. 21-22)(internal citation omitted). The District Judge further noted that an "important component of anti-SLAPP statutes is that they *quickly* dispose of SLAPPs" but that "UPEPA's mandate to quickly resolve motions implicating a defendant's speech . . . cannot apply in federal court." (*Id.* at p. 25 n.7)(emphasis in original).

The District Judge also addressed in the May 6, 2025 Opinion the manner in which a defendant may raise an anti-SLAPP argument in federal court, having determined that the UPEPA's fee-shifting provision cannot be asserted as a counterclaim. (*Id.* at p. 35.) The District Court held that "a fee-shifting provision must be brought by motion rather than as a counterclaim" in federal court and that "[i]f Shaulis prevails on a Rule 12(c) motion for

5

judgment on the pleadings or on a Rule 56 motion for summary judgment, he may file an application for attorney's fees under UPEPA." (*Id.* at pp. 35-36.)

Defendant thereafter filed a motion for judgment on the pleadings pursuant to Rule 12(c). The District Judge held a hearing on the motion on August 12, 2025, at which time Defendant argued that the Court could consider the facts alleged in the counterclaim, even though the District Judge determined in the May 6, 2025 Opinion that the Court could not consider the anti-SLAPP argument by way of counterclaim. (Transcript of Motion Hearing [D.I. 62], Aug. 12, 2025, pp. 16:7-18.) On December 15, 2025, the District Judge entered an Opinion and Order denying the motion for judgment on the pleadings without prejudice and directing the parties to proceed with limited discovery on three topics: "the factual basis on which Shaulis' speech relies;" "whether this matter concerns a matter of public concern such that the actual malice standard and the protections afforded by the UPEPA apply;" and "the extent of the damage, if any, the alleged defamatory posts caused Plaintiffs." (Op. [D.I. 78], Dec. 15, 2025, pp. 13-15.) In the Opinion, the District Court noted that "[w]hile the Court acknowledges the persuasiveness of Shaulis' argument as to the intent behind the UPEPA as it relates to discovery, the Court must ultimately disagree. Under the Federal Rules of Civil Procedure,

6

which govern this matter, such disputes must proceed to discovery." (Op. [D.I. 78], Dec. 15, 2025, p. 8.)[3]

Following a status conference to address the limited discovery to be conducted in accordance with the District Judge's Opinion and Order, this Court permitted Plaintiffs to serve five document requests "with respect to the factual basis on which Defendant's speech relies," and all parties were permitted to serve five document requests "on the issue of public concern" and five requests on the issue of "Plaintiffs' purported damages[.]" (Order [D.I. 87], Jan. 21, 2026.) Both parties have asserted that the other side served evasive and non-responsive responses to their respective requests. By Order dated February 19, 2026, the parties were granted leave to file the instant motions to compel. (Order [D.I. 91], Feb. 19, 2026, p. 2, ¶ 5.)

The Court first addresses Defendant's motion to compel, which relates to Defendant's document requests on the issue of public concern. Pursuant to this Court's January 21, 2026 Order permitting limited discovery, Defendant served five requests for production of documents seeking discovery to establish whether the

---

[3] As set forth above, the District Court previously noted in the May 6, 2025 Opinion that the "discovery-limiting aspects" of the New Jersey anti-SLAPP statute does not apply in federal court and that the remedy under the UPEPA is fee-shifting following a successful Rule 12 or Rule 56 motion. (Op. [D.I. 45], May 6, 2025, pp. 2, 21.)

public has an interest in abuses in for-profit education and Plaintiff Paucek's participation in such alleged abuse:

> Document Request No. 6: "All documents reflecting any criticism Paucek has received (or 2U has received while Paucek was CEO of 2U) about 2U's or Paucek's purported improper or controversial activities in the field of for-profit education."

> Document Request No. 7: "All documents reflecting commentary of any kind by any individual or entity, media or otherwise, on 2U prior to Defendant's Posts."

> Document Request No. 8: "All documents evidencing Paucek's (or 2U's while Paucek was CEO of 2U) solicitation of public attention, publicity, or media coverage as it relates to 2U's business model prior to Defendant's Posts."

> Document Request No. 9: "All documents reflecting Paucek's (or 2U's while Paucek was CEO of 2U) awareness of or engagement with public criticism, commentary or debate concerning 2U's business model/activities prior to Defendant's Posts."

> Document Request No. 10: "All documents reflecting any governmental, regulatory, legislative, or law-enforcement inquiry, investigation, hearing, report, or oversight activity concerning 2U's business model or practices during the period Paucek served as CEO of 2U, including any communications with regulators, legislators, or governmental bodies relating to for-profit education."

(Decl. of Christopher Serbagi, Esq., Mar. 2, 2026, Ex. 6 [D.I. 101-9, p. 5.)

Plaintiffs respond that "[e]very single one of these requests [is] improperly focused on Paucek's work at a company that is completely unrelated to PAC – namely, 2U, Inc." (Pls.' Opp. to Def.'s Mot. to Compel, for Fees and Costs, and for

8

Sanctions (hereinafter, "Pls.' Opp. Br.") [D.I. 106], p. 12.) Plaintiffs contend that Defendant's posts "do not focus on 2U, Inc. but instead accuse PAC of being a 'scam' based on Paucek being 'the consummate con man' and having a 'track record as an unethical businessperson.'" (*Id.*) Plaintiffs represent that "[n]either PAC nor Paucek retain a file containing lawsuits, criticisms, online posts, or the other types of materials regarding 2U" that are "indicative of the public concern issue."[4] (*Id.*) Plaintiffs note that they have not searched every document in their possession, but they represent that they performed a "reasonable and diligent search of their physical and electronic files," utilized the terms "scam," "conman" and "unethical" in their ESI searches, and have found no responsive documents. (*Id.*) Although Plaintiffs state that they requested Defendant provide additional alternative ESI search terms, they represent that Defendant has not suggested any other search terms. (*Id.* at p. 8.) Plaintiffs further assert that Defendant's document requests could result in the production of documents that have no relevance to the posts at issue in this lawsuit, such as a dispute with a vendor or a complaint by an event

---

[4] In this regard, Plaintiffs state that "PAC is a separate business entity with no operational connection to 2U, and there is no basis to assume PAC would maintain files concerning 2U-related matters" and that there is no basis "to conclude that Paucek, a former 2U executive who relinquished his work devices upon departure, retained such materials in his possession, custody, or control." (*Id.* at p. 2.)

attendee about food service, which are not matters of public concern. (*Id.* at p. 1.) Finally, Plaintiffs argue that Defendant already has access to documents to establish the public concern element of his anti-SLAPP motion, as defense counsel filed a declaration containing sixteen pages and forty-five paragraphs that reference "a number of newspaper articles and anonymous online comments" that are publicly available. (*Id.* at pp. 2, 13.)

"The general framework for determining the scope of allowable discovery for cases in federal courts is provided by Federal Rule of Civil Procedure 26," *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

In connection with the public concern element of an anti-SLAPP motion, the Court notes that "[s]peech involves matters of public concern 'when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest;

10

that is, a subject of general interest and of value and concern to the public.'’" *Lane v. Franks*, 573 U.S. 228, 241 (2014)(internal citations omitted). "[C]ourts have allowed commentary on public officials, private institutions that spend public funds, creative and scientific works presented to the public, and economic and social welfare events such as strikes and demonstrations." *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 227 (N.J. 1986).

The Court finds that the document requests, except for Document Request No. 7 as drafted, seek information that is relevant under Rule 26 standards to the public interest inquiry identified by the District Court.[5] As asserted by Defendant, the documents requested in Document Request Nos. 6, 7 (limited as set forth *supra*), 8 and 9 "bear directly on whether 2U's business practices and Mr. Paucek's role were matters 'of political, social or other concern to the community' and subjects of legitimate news interest before Defendant's post." (Mem. of Law in Supp. of Def.'s Mot. to Compel, for Attorneys' Fees and Costs, and for Sanctions (hereinafter, "Defs.' Br.") [D.I. 101-2], p. 13.) In addition, Document Request No. 10, to the extent it seeks information concerning "[o]versight hearings, investigations, regulatory

---

[5] The Court finds that Document Request No. 7 is overly broad insofar as it seeks documents reflecting "commentary of any kind by any individual or entity . . . on 2U" and is not limited to public interest issues as identified by Defendant. The parties shall meet and confer to narrow the scope of this request.

11

communications, and law-enforcement scrutiny" (*id.*), is also likely to lead to information concerning whether 2U's and/or Plaintiff Paucek's business practices in for-profit education were the subjects of concern to the community.

In so finding, the Court notes that the discovery requested by Defendant relates to non-party 2U rather than Plaintiff PAC, but the Court concludes that such discovery is nonetheless relevant to the issues presently before the Court. Plaintiffs previously argued to the District Judge that documents concerning 2U are not relevant in this litigation because the allegedly defamatory statements were directed to Plaintiffs Paucek and PAC, but the District Court has already rejected this argument, stating that the case "is about companies that Mr. Paucek has been -- has operated on, they have dealt with education, and now he's starting up PAC, which is to educate and teach and provide careers for sports people. And so it's all within the realm of education, and these are all matters of public concern." (Transcript of Motion Hearing [D.I. 62], Aug. 12, 2025, p. 42:2-6.) As noted above, the complaint contains a number of allegations about 2U in an effort to establish Plaintiff Paucek's reputation as an accomplished businessman. (*See* Compl. [D.I. 1], pp. 4-8, ¶¶ 12-25.) In addition, the complaint alleges that Defendant "falsely accuses Mr. Paucek of having a 'track record as an unethical businessperson[.]'" (*Id.* at p. 9, ¶ 30.) In light of these allegations, the Court finds

12

that Plaintiff Paucek's prior conduct with 2U is relevant under Rule 26 standards to the claims in this case.

However, to the extent Plaintiffs do not have possession, custody or control of documents relating to 2U, the Court cannot compel production of such documents from Plaintiffs. Federal Rule of Civil Procedure 34(a) requires a party to produce "items in the responding party's possession, custody, or control." FED. R. CIV. P. 34(a)(1). As set forth above, Plaintiffs represent that "there is no basis to assume PAC would maintain files concerning 2U-related matters" and that Plaintiff Paucek "relinquished his work devices upon departure[.]" (Pls.' Opp. Br. at p. 2.) Plaintiffs further represent that they "do not believe they are in possession, custody, or control of any documents responsive to the kinds of public concern documents Defendant Shaulis appears to be seeking."[6] (*Id.* at p. 4.) Plaintiffs must produce any documents that fall within the confines of the document requests served by Defendant, but the Court will not compel

---

[6] As set forth above, Plaintiffs state that they conducted an ESI search by limiting the search terms to the words "scam," "conman" and "unethical." (Pls.' Opp. Br. at p. 7.) However, these search terms conflate the issue of public concern and the issue of the factual basis for Defendant Shaulis' statements. The parties are directed to meet and confer on additional search terms, and Plaintiffs shall conduct an additional ESI search for the terms agreed upon by the parties.

13

Plaintiffs to produce documents that are not within their possession, custody or control.[7]

In so finding, the Court rejects Plaintiffs' argument that Defendant already has or can access in public records the information necessary to establish the public concern factor and that discovery should be limited pursuant to the proportionality factor of Rule 26(b). As noted above, one of the factors a court must consider in determining the scope of discovery under Rule 26(b)(1) is the parties' relative access to relevant information, but a proportionality inquiry entails analysis of a number of additional factors, including the amount in controversy, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* FED. R. CIV. P. 26(b)(1). Plaintiffs do not address any of these other factors in arguing that Defendant's discovery requests are not proportional. The Court recognizes that Defendant has a number of documents that purportedly relate to the public concern issue, as his counsel filed a declaration setting forth "a spattering of articles, reports, and court decisions that demonstrate that abuses in for-profit education is indeed a matter of 'concern to the community.'"

---

[7] Plaintiffs are directed to serve an affidavit confirming their representation that they do not have possession, custody or control of documents responsive to Defendant's document requests.

14

(Def.'s Br. [D.I. 101-2], p. 12.) Defendant's counterclaim also contained reference to such articles, reports and decisions (*see, e.g.,* Am. Answer and Counterclaim [D.I. 25], pp. 14-27, ¶¶ 119-151), yet the District Court concluded in its December 15, 2025 Opinion that additional discovery on the issue of public concern must nonetheless be conducted.[8] (Op. [D.I. 78], Dec. 15, 2025, p. 14.) The Court therefore will not foreclose Defendant's ability to take discovery on the issue of public concern on the basis that Defendant already has some information relevant to this issue.

Moreover, in light of Plaintiffs' representation that documents responsive to Defendant's discovery requests may be in the possession, custody or control of 2U, the Court will grant Defendant's request to serve a subpoena on 2U. However, Defendant may not utilize a subpoena to 2U to expand the limited scope of discovery at this time, but may rather obtain by way of subpoena to 2U the documents that Defendant was unable to obtain from

---

[8] While the District Court concluded that it could not take judicial notice of the documents referenced in the counterclaim, it was aware that Defendant had such documents but still ordered discovery on this issue. (*See* Op. [D.I. 78], Dec. 15, 2025, p. 14)("The crux of Shaulis' argument as to why his speech addresses an area of public concern relies solely on the Court's ability to take judicial notice of facts alleged in his now-dismissed counterclaim. . . . This simply cannot be done here. Therefore, more discovery is necessary to make a proper determination as to whether this matter concerns a matter of public concern[.]").

15

Plaintiffs directly.[9] Any subpoena to 2U shall seek to obtain only the same documents that were requested in the document requests served on Plaintiffs.

Finally, the Court addresses Defendant's request for sanctions. Defendant contends that sanctions are warranted under Federal Rule of Civil Procedure 37(a)(5)(A) because Plaintiffs allegedly refused to participate in discovery. (*See* Def.'s Br. at pp. 17-18.) In addition, Defendant seeks sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2) because Plaintiffs have purportedly failed to comply with "multiple" court orders, including the District Judge's directive that the parties shall participate in limited discovery and this Court's Order permitting Defendant to seek discovery from Plaintiffs on the public concern issue. (*Id.* at pp. 19-20.) Plaintiffs respond that they have "proceeded in good faith in an attempt to locate responsive documents that are properly within the scope of the limited discovery granted by the Court" and either "do not have any such responsive documents, or cannot conduct a reasonable search for

---

[9] In permitting service of a subpoena on 2U, the Court notes Plaintiffs' concern that Defendant has an ulterior motive in seeking documents from 2U. (Pls.' Opp. Br. at p. 14.) Any concern about use of discovery in this case for improper purposes may be addressed by way of a Discovery Confidentiality Order, and the parties shall be directed to meet and confer on a proposed form of order.

16

them due to the unreasonable breadth and lack of clarity" in the requests. (Pls.' Opp. Br. at p. 16.)

Federal Rule of Civil Procedure 37(a)(5) provides that if a motion to compel is granted "or if the disclosure or requested discovery is provided after the motion was filed[,] the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5). Federal Rule of Civil Procedure 37(b)(2) provides that if a party fails to comply with a discovery order, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure[.]" FED. R. CIV. P. 37(b)(2)(C). Despite the mandatory nature of these rules, both rules provide that the Court may decide not to impose sanctions if the failure to produce discovery or comply with a court order was "substantially justified" or "other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5); FED. R. CIV. P. 37(b)(2)(C).

Defendant argues that Plaintiffs' counsel has not participated in discovery and has ignored court orders, but the record demonstrates that Plaintiffs' counsel has engaged in meet and confers, conducted searches for documents, and sought

clarification about the scope of Defendant's document requests. Plaintiffs' failure to produce documents appears to be due to their lack of access to responsive documents, as the documents are purportedly in the possession, custody or control of non-party 2U, and not due to a refusal to participate in discovery. As such, the Court denies Defendant's motion to compel and makes no finding at this time that Plaintiffs failed to comply with a court order. Defendant's request for sanctions is consequently denied.

The Court next addresses Plaintiffs' motion to compel.[10] As set forth above, by Order dated January 21, 2026 the Court permitted limited discovery on three issues, including "the factual basis on which Defendant's speech relies" and "the issue of Plaintiffs' purported damages[.]" (Order [D.I. 87], Jan. 21, 2026, p. 1, ¶¶ 1-2.) Plaintiffs served the following requests that are now at issue:

> Request No. 1: "All documents in Defendant's possession, or which he accessed, prior to publication of the Posts that support, refute, were consulted, were used to prepare, or are related to the factual basis for any statements you made regarding Paucek or PAC in the Posts."
>
> Request No. 2: "All documents related to any research, investigation, interviews, or communications with third parties that you relied upon, consulted, or considered in drafting the Posts."

---

[10] The motion to compel also includes a request for sanctions pursuant to Federal Rule of Civil P. 37(a)(5)(A), but Plaintiffs proffer no analysis as to why an award of sanctions is appropriate under this rule. Accordingly, the request for sanctions is denied.

> Request No. 3: "All documents relating to communications with third parties, including but not limited to all 'experts in the education business' referenced in the [Amplifying] Post (Exhibit C to the Complaint), John Katzman, and/or individuals associated with Noodle Partners or other entities owned or controlled by John Katzman, pertaining to any claims or allegations of improprieties, unethical behavior, or other wrongdoing by Paucek or PAC."
>
> Request No. 4: "All documents concerning information to which Defendant referred when he offered that 'We will share with you what we know,' in the [SCAM Post] (Exhibit B of the Complaint)."
>
> Request No. 9: "All documents relating to communications between Defendant and the National Football League or NFL Players' Association (including any representative of either entity), or any current or former professional athlete, regarding Plaintiffs."

(Decl. of Chad A. Rutkowski, Esq., Mar. 2, 2026, (hereinafter, "Rutkowski Decl."), Ex. A  [D.I. 102-4], pp. 5, 6.)

Defendant contends that Document Requests 1, 2 and 4 rest on a "flawed assumption" that "Defendant's opinions were derived from discrete, identifiable facts reflected in documents" and are crafted to "force a false concession" that his opinions were derived from facts. (Def.'s Mem. of Law in Opp. to Pls.' Mot. to Compel (hereinafter, "Def.'s Opp. Br.") [D.I. 104], pp. 6, 17, 19-22.) Defendant maintains that he has no documents responsive to these requests because his opinions are not "grounded in specific, provable facts" and are not based on specific documents in his possession that can be isolated and produced. (*Id.* at p. 20.) Defendant contends that "his statements reflect an evaluative judgment developed over time based on general awareness of publicly

19

available information, industry discourse, and long-term observation" and that "no responsive documents exist as framed by Plaintiffs' Requests[.]" (*Id.* at pp. 19, 23.) With respect to Document Request No. 3, Defendant asserts that the request is based on Defendant's references to "experts" and a broader "universe of documents," but such references only "reflect evaluative judgment and general awareness developed over time, not reliance on specific, identifiable documents[.]" (*Id.* at p. 23.) Defendant argues that "Plaintiffs cannot convert descriptive language into a discovery violation." (*Id.*) Finally, with respect to Document Request No. 9, Defendant contends that Plaintiffs' damages are "fixed at the time of publication" and that he does not have any documents that evidence "lost business opportunities, third-party decisions, or any reaction to the posts" and "do not show athletes or partners declining to engage with PAC." (*Id.* at pp. 25-26.) Defendant also asserts that the District Court made no finding that the facts upon which Defendant may have relied exist in documentary form. (*Id.* at pp. 13, 14, 23.)

In deciding Plaintiffs' motion, the Court notes that the District Court already stated that "[w]hether Paucek is or is not a 'consummate con man' is not capable of being true or false but whatever facts Shaulis relied upon to draw such a conclusion may be." (Op. [D.I. 78], Dec. 15, 2025, p. 12.) In addition, the District Court stated that "there do appear to be undisclosed facts

forming Shaulis' opinion that Paucek has a 'track record as an unethical businessperson' so much so that he felt the need to put his audience on 'scam alert'" and "offered to 'share . . . what we know' with PAC's potential clients and business associates if they provided him with details of their conversations with Plaintiffs." (*Id.*) The Court found that "[s]uch a statement is an express offering of factual support he was purporting to possess, yet choosing to withhold." (*Id.* at pp. 12-13.)

In *Milkovich v. Lorain J. Co.*, the United States Supreme Court noted that "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990). "Simply couching such statements in terms of opinion does not dispel these implications[.]" *Id.* at 19. Moreover, as explained in *Dairy Stores,* the New Jersey Supreme Court explained that "a pure opinion is one that is based on stated facts or facts that are known to the parties or assumed by them to exist." *Dairy Stores*, 516 A.2d at 231. "By comparison, a 'mixed' opinion is one that is not based on facts that are stated or assumed by the parties to exist" but rather based on facts not expressly stated or assumed to exist. *Id.*

Here, Defendant insists that his statements are solely an opinion, not based on facts, and he argues that forcing him to produce documents in response to discovery requests seeking the "factual basis" for his statements requires Defendant to concede

21

Plaintiffs' theory of the case. Defendant maintains that the allegedly defamatory posts "reflect evaluative judgment and general awareness developed over time, not reliance on specific identifiable documents responsive to Plaintiffs' Requests." (Def.'s Opp. Br. at p. 23.) In a declaration filed in opposition to Plaintiffs' motion, Defendant concedes that he "has collected documents that pertain to a number of bad acts others have reported about Mr. Paucek and 2U under Mr. Paucek's leadership as well as articles that have been written on that subject[,]" although Defendant contends that he did not "rely on or reference those documents in [his] evaluative opinion" and did not produce them because they are not "responsive to Plaintiffs' Requests as phrased[.]" (Decl. of Dahn Shaulis [D.I. 104-1], Mar. 23, 2026, p. 9, ¶¶ 39, 40.) The Court will direct Plaintiffs to revise their requests for production of documents so that they seek "all documents that reflect Shaulis' evaluative judgment and general awareness developed over time" rather than documents "related to the factual basis for any statements" made by Defendant, and Defendant shall be required to respond to these document requests in good faith.[11]

---

[11]  Notwithstanding Defendant's present assertion that his statements were not based on "discrete, identifiable documents" (Def.'s Opp. Br. at p. 1), defense counsel stated during the conference on January 21, 2026 that Defendant "would be happy to produce the documents, the types of documents that Mr. Shaulis

22

"The federal rules do not and should not require plaintiffs to use 'magic words' to obtain clearly relevant discovery." *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 709 (D.N.J. 2015); *MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 18-02211, 2024 WL 4100379, at *5 (D.N.J. Sept. 6, 2024)("[t]he Federal Rules of Civil Procedure make clear that '[i]nterrogatories and production requests should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request'")(quoting *Joaquin v. Lonstein L. Offs., P.C.*, No. 15-08194, 2019 WL 399136, at *3 (D.N.J. Jan. 31, 2019)). To the extent Defendant has documents relevant to this case, such documents should be produced and not withheld based on an overly restrictive reading of Plaintiffs' document requests. Defendant may clarify that any production of documents is not an admission that the online statements at issue in this case are based on facts.

As noted above, Plaintiffs' motion to compel also seeks to compel a response to Request No. 3, which seeks discovery in connection with Defendant's online post in which he stated that his alleged defamatory characterizations of Plaintiff Paucek are "based on information and opinions obtained from experts in the

---

relied upon for his statement." (Transcript of Telephonic Discovery Conference [D.I. 88], Jan. 21, 2026, p. 8:11-13.)

23

education business[.]" (*See* Op. [D.I. 78], Dec. 15, 2025, p. 6.) Defendant responded to this request by indicating that he only has a single document "arguably responsive" to this request, notwithstanding his blog post in which he referred to "information and opinions obtained from experts in the education business." (Mem. of Law in Supp. of Pls.' Mot. to Compel Def.'s Production of Documents (hereinafter, "Pls.' Br." [D.I. 102-1], p. 12.) Defendant argues that "Plaintiffs' theory improperly assumes that references to general information, industry knowledge, or conversations must correspond to discrete, producible documents." (Def.'s Opp. Br. at p. 23.) Defendant further explains that "such references reflect evaluative judgment and general awareness developed over time, not reliance on specific, identifiable documents," and "Plaintiffs cannot convert descriptive language into a discovery violation." (*Id.*) Moreover, in the declaration filed in opposition to this motion, Defendant Shaulis represents that he has "spoken to experts in the field of higher education[,]" but there is no information to demonstrate that the "information and opinions obtained from experts" was reduced to writing. (Decl. of Dahn Shaulis [D.I. 104-1], Mar. 23, 2026, p. 3, ¶ 6.) The Court cannot compel Defendant to produce documents that Defendant represents do not exist.[12]

---

[12] The Court notes, however, that Defendant has an obligation pursuant to Federal Rule of Civil Procedure 26(a) to produce, even

The final issue raised in Plaintiffs' motion to compel relates to Plaintiffs' requests for documents in connection with their claim for tortious interference with prospective business relations. The District Judge allowed the tortious interference claim to "proceed to limited discovery as to the extent of the damage, if any, the alleged defamatory posts caused Plaintiffs." (Op. [D.I. 78], Dec. 15, 2025, p. 15.) As set forth above, Plaintiffs' Document Request No. 9 seeks "[a]ll documents relating to communications between Defendant and the National Football League or NFL Players' Association (including any representative of either entity), or any current or former professional athlete, regarding Plaintiffs." (Rutkowski Decl., Ex. A  [D.I. 102-4], p. 6.) Defendant opposes production of documents that post-date the allegedly defamatory online posts, citing Paragraph 78 of the complaint and arguing that "Plaintiffs' theory of damages is fixed at the time of publication[.]" (Def.'s Opp. Br. at p. 24.)

---

in the absence of a discovery request, "a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to supports its claims or defenses, unless the use would be solely for impeachment" as well as the name and contact information of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i)-(ii). A party that fails to make these initial disclosures may be subject to sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1).

The Court rejects Defendant's temporal limitation on the scope of Document Request No. 9. Paragraph 78 of the complaint states:

> Mr. Shaulis has interfered with PAC's business opportunities by publishing the Defamatory X Post and Defamatory HEI Publication and thereby damaging the reputations of Mr. Paucek and PAC as well as dissuading professional athletes, industry experts, and educators from being involved or associated with PAC.

(Compl. [D.I. 1], p. 18, ¶ 78.) In addition to Paragraph 78, other paragraphs in the complaint demonstrate that Plaintiffs allege future loss of revenue from athletes or business partners that accepted Shaulis's invitation to contact him. For example, Plaintiffs allege in Paragraph 76 that "PAC has a reasonable probability of business opportunities with a growing number of professional athletes to become members of PAC and to participate in its programs." (*Id.* at p. 18, ¶ 76.) Further, Paragraph 75 states: "Mr. Shaulis's Defamatory X Post and Defamatory HEI Publication *are likely to* interfere with PAC's *prospective* business relations with professional athletes, industry experts, and educators." (*Id.* at p. 18, ¶ 75)(emphasis supplied).

The nature of Plaintiffs' tortious interference claim is a request for damages for anticipated future economic benefit lost due to Defendant's online posts. "To establish a state law claim for tortious interference with prospective economic advantage, 'Plaintiff must plead that: (1) it had a reasonable expectation of

26

an economic benefit; (2) Defendant's knowledge of that expectancy; (3) Defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit, but for Defendant's interference; and (5) damages resulting from the defendant's interference.'" *Heartland Payment Sys., LLC v. Carr*, No. 18-09764, 2021 WL 302918, at *7 (D.N.J. Jan. 29, 2021)(internal citation omitted). The Court rejects Defendant's efforts to fix the damages as of the date of the allegedly defamatory posts, as such posts, if seen subsequent to the date of the posts, could have dissuaded potential customers from doing business with Plaintiffs and fall under Rule 26(b)(1) standards as relevant discovery to a tortious interference claim.

Defendant represents that he nonetheless does not have documents responsive to the request because Plaintiffs subsequently narrowed the request to "outreach by athletes, the NFL, the NFLPA, or other partners or potential partners of PAC . . . after the subject posts," and he does not have documents within the scope of this narrowed document request. (Def.'s Opp. Br. at p. 25.)[13] Defendant contends that the communications in his

---

[13] Defendant quotes from Exhibit 3 of the Declaration of Dahn Shaulis, which purportedly contains a letter dated February 28, 2026 from Plaintiffs' counsel limiting the scope of Document Request No. 9. (*See* Decl. of Dahn Shaulis [D.I. 104-1], Mar. 23, 2026, p. 8, ¶ 32.) Exhibit 3, however, is an email dated February 24, 2026 and does not contain the communication referred to in

possession, custody or control do not reflect outreach by allegedly deterred third parties but instead reflect outreach by Defendant himself. (*Id.* at p. 26.) He represents that he has not "received communications from athletes, the NFL, the NFLPA, or other such third parties in response to my posts, as Plaintiffs requested." (Decl. of Dahn Shaulis [D.I. 104-1], Mar. 23, 2026, p. 8, ¶ 34.) Defendant concedes, however, that he has "pertinent documents" that he is willing to produce on an *in camera* basis. (*Id.* at p. 9, ¶ 38.)

The Court will not limit the discovery request to only communications from individuals who initiated the communication with Defendant in light of his online posts. If, for example, Defendant contacted professional athletes subsequent to his posts, shared his posts, and thereafter received a response from the athletes, such communications are within the scope of Document Request No. 9. Defendant shall be required to produce any documents that are responsive to Plaintiffs' Document Request No. 9,

---

Defendant's brief. It appears that the communication at issue is attached as Exhibit 4 to the Declaration of Christopher Serbagi, Esq. dated March 23, 2026, which is an email from Plaintiffs' counsel dated February 25, 2026. (Decl. of Christopher Serbagi, Esq., Mar. 23, 2026, Ex. 4 [D.I. 104-9].) The communication in context is an attempt to contrast the temporal scope of Defendant's document requests on the issue of public concern with the temporal scope of Plaintiffs' request for damages discovery in connection with the tortious interference claim. The communication does not suggest an effort to limit the scope of Document Request No. 9 to only communications in which non-parties initiated communications with Defendant.

regardless of whether the communication was initiated by Defendant or a non-party, and regardless of whether such communication occurred after the date of Defendant's online posts. Moreover, Defendant's request for an *in camera* inspection is denied at this time. Defense counsel provides no argument why an *in camera* review is warranted under the circumstances. Defense counsel may determine the responsiveness of the documents within Defendant's possession in accordance with the court rules and this Order.

In summary, the Court denies Defendant's motion to compel but will grant Defendant leave to serve a subpoena on 2U seeking the same documents already requested from Plaintiffs. Plaintiffs' motion to compel is granted in part and denied in part. Plaintiffs shall revise their discovery requests to seek documents that "reflect evaluative judgment and general awareness developed over time," and Defendant may respond to such requests by clarifying that his response does not constitute an admission on an ultimate issue in this case. Moreover, Defendant shall respond to Document Request No. 9 as set forth above, but Plaintiffs' request to compel a response to Document Request No. 3 is denied. Finally, the parties shall prepare a Discovery Confidentiality Order[14] and meet and confer on proposed ESI search terms in

---

[14] The parties shall utilize the Local Civil Rules for the District of New Jersey, Appendix S, which contains a form Discovery Confidentiality Order. To the extent the parties seek changes to the form of Order, they shall send a letter with a proposed revised

29

connection with Defendant's document requests and revisions to Defendant's Document Request No. 7, as set forth above. Each party's request for an award of fees and/or sanctions is denied.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this **24th** day of **June 2026,**

**ORDERED** that Defendant's motion [D.I. 101] to compel shall be, and is hereby, **DENIED**; and it is further

**ORDERED** that Plaintiffs' motion [D.I. 102] to compel shall be, and is hereby, **GRANTED** in part and **DENIED** in part as set forth herein; and it is further

**ORDERED** that the parties shall submit a proposed Discovery Confidentiality Order by no later than **July 10, 2026;** and it is further

**ORDERED** that the parties shall meet and confer on ESI search terms in connection with Defendant's Requests for Production of Documents and on limitations to Document Request No. 7, as set forth above; and it is further

**ORDERED** that Defendant is granted leave to serve a subpoena on 2U, Inc., limited to the documents previously sought from Plaintiffs; and it is further

---

form of order which reflects in redline format the changes they seek, and they shall provide an explanation for such requested changes.

**ORDERED** that Plaintiffs shall serve revised Document Requests 1, 2, and 4 as set forth above; and it is further

**ORDERED** that Plaintiffs shall serve on Defendant an affidavit confirming their representation that they have no documents in their possession, custody or control concerning 2U, as set forth above; and it is further

**ORDERED** that Plaintiffs' request to compel a further response to Request No. 3 is denied; and it is further

**ORDERED** that Defendant shall respond to Document Request No. 9 as set forth above; and it is further

**ORDERED** that the parties shall respond to any discovery ordered pursuant to this Order **within ten (10) days** of entry of a Discovery Confidentiality Order; and it is further

**ORDERED** that each party's requests for attorneys' fees and/or sanctions is denied; and it is further

**ORDERED** that the Court will conduct a telephonic status conference on **August 5, 2026 at 11:00 A.M.** Counsel shall utilize the following dial-in instructions for the conference: **1-856-210-8988 / 603 701 206#.** At least three (3) business days prior to the scheduled conference, the parties shall send the Court a letter identifying all discovery disputes, if any exist.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Renée Marie Bumb

31